**SCHENKEL & SHULTZ, INC.,**
Plaintiff–Appellant,

v.

**HOMESTEAD INSURANCE COMPANY,**
Defendant–Appellee.

No. 96–3169.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 27, 1997.

Decided July 16, 1997.

Scott T. Niemann (argued), Daniel G. McNamara, Martin T. Fletcher, Sr., Rothberg & Logan, Fort Wayne, IN, for plaintiff–appellant.

Edward L. Murphy, Jr., Miller, Carson, Boxberger & Murphy, Fort Wayne, IN, Michael P. Tone (argued), Kristi A. Gleim, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL, for defendant–appellee.

Before BAUER, WOOD, JR., and ROVNER, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Schenkel and Shultz, Inc. ("S & S"), a firm of architects, engineers, and construction managers, made miscalculations in the design and construction of a building for Center City Associates, L.P. ("CCA"), resulting in a cost overrun of more than $1 million. S & S filed a claim with Homestead Insurance Company ("Homestead") under its professional liability policy ("the Policy"). Homestead denied coverage because S & S violated some of the terms of the Policy. The district court found that Homestead properly denied coverage and granted summary judgment in favor of Homestead. We affirm.

## I. BACKGROUND

S & S, a Fort Wayne, Indiana corporation, purchased professional liability insurance from Homestead, a Pennsylvania corporation. The Policy covered up to $1 million of damages with a deductible of $100,000, and ran from March 11, 1993 to March 11, 1996. The Policy contained, inter alia, exclusions that denied coverage in particular circumstances. Exclusions V.B.1. and V.C.3., which are the exclusions at issue in this case, read:

B. Notwithstanding anything contained in this Policy to the contrary, the coverage herein shall not apply to a claim made against the Insured:

1. By a person, firm or organization (or its subrogee, assignee, indemnitee, contractor, subcontractor, subsidiary, affiliate or division) that wholly or partly owns, operates, manages, or controls the Insured, whether directly or indirectly, or that is wholly or partly owned, operated, managed or controlled by the Insured, whether directly or indirectly . . .

\*      \*      \*      \*      \*      \*

C. Notwithstanding anything contained in this Policy to the contrary, the coverage hereunder shall not apply with respect to a project for which any construction, including but not limited to any demolition, erection, excavation or the assembly, fabrication or installation of any components or equipment, was performed in whole or in part:

\*      \*      \*      \*      \*      \*

3. By a person, firm or organization (or its contractor, subcontractor, subsidiary, affiliate or division) that wholly or partly owns, operates, manages or controls the Insured, whether directly or indirectly, or that is wholly or partly owned, operated, managed or controlled by the Insured, whether directly or indirectly . . .

(Appellant App. at 24–25.) We will discuss these exclusions collectively as the "Ownership Exclusions" because they both raise the same issue in this appeal: the meaning of the term "own."

In March 1993, S & S began construction on the "Norwest Indiana Center" building in Fort Wayne pursuant to a contract with CCA, a limited partnership of which S & S holds a 20% interest. In early May 1994, serious problems developed in the construction. Pre-cast concrete panels affixed to the side of the building began to pull away from the facade. S & S stabilized the panels and hired an independent engineer to assess the situation. At first it thought the problem was only in the construction, involving a relatively minor correction cost (approximately $90,000). Later it found the problem was much more serious: faulty structural design by S & S's engineers. S & S ultimately spent $1,257,337.06 to remedy the defects.

On July 22, 1994, S & S first contacted Homestead about the cost overrun in a letter which stated:

We are notifying your office of a claim pursuant to our policy referenced above. We are continuing our review of the situation but have been unable to develop any final cost estimates due to the additional design problems. To date, we have incurred extra charges from Structural En-

gineering Services and the steel contractor in excess of $150,000.

(Appellant App. at 60.) Homestead refused coverage on September 28, 1994 on the grounds that S & S had violated the Ownership Exclusions and the clause entitled Conditions Precedent to Coverage ("Conditions Clause"). (Appellant App. at 121–26.) S & S filed this action against Homestead in June 1995, asserting the Ownership Exclusions did not bar coverage of its claim because, taken in the context of the policy, the word "own" meant "control" which did not accurately describe its role in CCA. S & S also maintained that the alleged violation of the Conditions Clause did not bar coverage because Homestead did not prove any resultant material prejudice, as required by Indiana law. *Miller v. Dilts,* 463 N.E.2d 257, 261 (Ind. 1984).

The district court granted summary judgment to Homestead. It concluded "own" was unambiguous in the Policy and, therefore, the Ownership Exclusions barred coverage. The district court also ruled the Conditions Clause violation did materially prejudice Homestead and it too barred coverage. S & S appealed.

## II. DISCUSSION

### A. *Standard of Review*

We review the district court's grant of summary judgment de novo. *National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir.1996). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 370 (7th Cir.1997). In making that determination we must view the record in a light most favorable to the non-moving party. *Weisbrot v. Medical College,* 79 F.3d 677, 680 (7th Cir. 1996). As a court sitting in diversity, we must also determine if the district court accurately applied the substantive state law.

*Colip v. Clare,* 26 F.3d 712, 714 (7th Cir. 1994).

### B. *The Ownership Exclusions*

The district court held that the Ownership Exclusions barred S & S's coverage; therefore we must review the district court's interpretation of the Policy. Under Indiana law, the interpretation of an insurance contract is a matter of law for the courts to determine. *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992). Courts must enforce an unambiguous contract by its plain meaning, even if the result limits the insured's coverage. *Cincinnati v. Flanders,* 40 F.3d 146, 151 (7th Cir.1994) (citing *Interstate v. Central Nat'l,* 448 N.E.2d 1094, 1098 (Ind. Ct.App.1983)). A contract or word is ambiguous only when reasonably intelligent people could differ on its meaning. *Northland v. Crites,* 419 N.E.2d 164, 167 (Ind.Ct.App. 1981).

S & S seeks a reversal of the district court's grant of summary judgment to Homestead and a remand for a trial on the merits. S & S argues that the district court's method of interpreting the contract was too narrow. It contends that the contract formed with Homestead consisted of the Policy and all the supporting documents, including the Business Application for Architects and Engineers ("the Application") which was incorporated by reference in Section VI of the Policy:

§ VI. ACCEPTANCE

* * * * * *

... the application attached hereto and forming a part hereof ...

* * * * * *

... the representations and affirmative and promissory warranties contained in the application attached to and forming a part of this policy....

(Appellant App. at 25.)

It further reasons that question 12 in the Application made "own" ambiguous in the Ownership Exclusions of the Policy. Question 12 inquired:

Does the Applicant *wholly or partly own, manage or otherwise control* any other firm or organization (whether directly or

indirectly).... If "Yes", provide full particulars and describe any interrelationship (emphasis added). (Appellant App. at 28.) S & S uses the doctrine of noscitur a sociis ("it is known by its neighbors") to argue that "own" in question 12 denoted something other than its plain meaning. According to S & S, the doctrine proposes that the dominant word of a series gives meaning to the subordinate words of the series. S & S says "control" was the dominant word in the question 12 series, therefore, "own" should have been read as "control." Since the Application was where S & S first made an impression of "own," it reasons that "own" meant "control" throughout the entire contract.[1]

S & S points to the terms of its CCA limited partnership agreement ("the Partnership Agreement") to show that it did not control CCA. Under those terms S & S could not "participate in the control, management, direction or operation of the business of the Partnership ... nor have any authority to bind or to act for the Partnership in any matter." (Appellant App. at 47.) Therefore, it concludes that the Ownership Exclusions did not bar its recovery.

■ We disagree. Under the principle of noscitur a sociis, the meaning of unclear words may be gleaned by reference to other words associated with it. *Bertrand v. Smeekens,* 156 Ind.App. 572, 298 N.E.2d 25, 27 (1973). We cannot use the doctrine to create uncertainty in an otherwise unambiguous term such as "own." Furthermore, the maxim suggests that a coupling of words only indicates that they are interrelated not synonymous. *Indiana v. D.M.Z.,* 674 N.E.2d 585, 588 (Ind.Ct.App.1996). Ownership might be indicative of control, but it does not mean control. *Harden v. Monroe Guar. Ins. Co.,* 626 N.E.2d 814, 820 (Ind.Ct.App.1993) (citing *Meridian Mortgage Co. v. Indiana,* 182 Ind.App. 328, 395 N.E.2d 433, 439 (1979)).

The word "own" was unambiguous both in the Application and in the Policy. "Own" is to "have a good legal title; to hold as property; to have a legal or rightful title to; to

have; to possess." Black's Law Dictionary 1105 (6th ed.1990). Section 4.1 of the Partnership Agreement, Allocation of Profits and Losses, established that S & S possessed 20% of the success or failure of CCA. (Appellant App. at 39.) By its plain meaning, "partly own" included S & S's 20% share of CCA.

■ Furthermore, we disagree that question 12 imposed meaning on the whole Policy. We can find no case law that supports the notion of "bootstrapping" ambiguity from an application to a policy. This Application had a limited purpose, providing information to the insurer. It did not make warranties to the applicant. Additionally, the preface to the Ownership Exclusions set them apart from any potential confusion, "Notwithstanding anything contained in this Policy to the contrary ...." (emphasis added). (Appellant App. at 25.) The Ownership Exclusions stood alone, independent of any ambiguities in the contract.

Because the Ownership Exclusions were properly employed to bar coverage, we affirm the district court's grant of summary judgment and we do not reach the merits of the Conditions Clause issue.

AFFIRMED.

---

1. The district court held, and we agree, that even if "own" was synonymous with "control" in this context, the Ownership Exclusions still applied to S & S. The Partnership Agreement revealed that, as a limited partner, S & S had the power to prevent a bankruptcy, block the exchange of assets and thwart the confessing of a judgment against CCA. S & S had some control of CCA.