**Dianna M. RICE and Chester Rice,
Appellants–Plaintiffs,**

v.

**MERIDIAN INSURANCE CO.,
Appellee–Defendant.**

No. 61A02–0012–CV–785.

Court of Appeals of Indiana.

June 4, 2001.

Thomas C. Newlin, Fleschner, Fleschner, Stark, Tanoos & Newlin, Terre Haute, Indiana, Guy O. Kornblum, San Francisco, California, Attorneys for Appellant.

Brad Bough, Modesitt, Bough & Kelly, Terre Haute, Indiana, Attorney for Appellee.

## OPINION

SHARPNACK, Chief Judge

Dianna M. Rice and Chester Rice (individually, "Dianna" and "Chester;" collectively, "the Rices") appeal the trial court's grant of summary judgment to Meridian Insurance Company ("Meridian"). The Rices raise five issues, which we consolidate and restate as whether the trial court erred in granting summary judgment to Meridian because Meridian was not required to indemnify the Rices for personal injuries to Dianna resulting from an automobile accident. We affirm.

The facts are not in dispute. On January 21, 1999, at about 9:30 in the morning, Dianna was driving her car along U.S. Highway 36 in Parke County, Indiana. The pertinent portion of U.S. 36 is a two-lane blacktop road. As Diana's car pro-

ceeded up a small hill, she saw that two vehicles were approaching her: a white car that was completely in her lane and a black truck that was in the other lane. To avoid a head-on collision, Dianna steered her car to the right and applied the brakes. When the right-side tires of Dianna's car left the road, Dianna lost control of her car and hit a concrete culvert. The impact with the culvert caused the car to become airborne, and it flew 150 feet before landing in the ditch on its side. Neither the white car nor the black truck stopped.[1]

When the accident occurred, Dianna was driving a white 1994 Oldsmobile that was covered by an insurance policy issued by Meridian (hereinafter, "the policy"). Part C of the policy provided uninsured motorist coverage. The relevant portions of that part of the policy follow.

INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

   1. "Bodily injury" sustained by an "insured"; and caused by an accident; . . .

* * * * *

D. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

* * * * *

   3. Which, with respect to damages for "bodily injury" only, is a hit-and-run vehicle whose owner or operator cannot be identified and which hits:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto."

Record, pp. 121–122.

The Rices filed a claim with Meridian for Dianna's accident; however, Meridian denied that coverage under the uninsured motorist provision of the policy. Subsequently, on October 7, 1999, the Rices filed a complaint in the Parke Circuit Court. On June 26, 2000, Meridian filed a motion for summary judgment. The trial court held oral arguments on the motion on September 21, 2000. On November 30, 2000, the trial court granted summary judgment in favor of Meridian.

The sole issue in this appeal is whether the trial court erred in granting summary judgment to Meridian because Meridian was not required to indemnify the Rices for personal injuries to Dianna resulting from an automobile accident. When reviewing a motion for summary judgment, we stand in the shoes of the trial court and apply the same standard that the trial court applied, without giving any deference to the trial court's ultimate decision. *Allis*, 628 N.E.2d at 1252. "Summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 742 (Ind.Ct.App. 1998) (citing Ind. Trial Rule 56(C)), *trans. denied.* When making our decision, we consider only those matters that have been designated by the parties to the trial court

---

1. The parties and previous courts have referred to this type of accident as a "miss-and-run" accident. *See, e.g., Indiana Ins. Co. v. Allis*, 628 N.E.2d 1251, 1252 (Ind.Ct.App. 1994), *trans. denied.* Consequently, we will adopt that terminology to describe this accident as well.

for consideration. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, those findings and conclusions are not binding upon us and do not alter our standard of review. *Id.* at 742–743.

■ Summary judgment is especially appropriate in the context of contract interpretation because the construction of a written contract is a question of law. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997). Insurance contract provisions are subject to the same rules of interpretation and construction as other contracts. *Id.* When we interpret provisions, our goal is to enforce the intent of the parties as provided in the insurance contract. *Mutual Sec. Life Ins. Co. by Bennett v. Fidelity and Deposit Co. of Maryland,* 659 N.E.2d 1096, 1098 (Ind.Ct. App.1995), *trans. denied.* If the language is clear and unambiguous, we give that language its "plain and ordinary meaning" and enforce the contract according to its terms. *Id.* If the language is ambiguous, then we construe the policy against the insurer. *Colonial Penn,* 690 N.E.2d at 667. "An ambiguity exists where the provision is susceptible to more than one reasonable interpretation." *Id.*

■ The contract term in question is the verb "hits" within the context of the uninsured motor vehicle provision in the policy. An uninsured motor vehicle is defined, in pertinent part, by the policy as a "hit-and-run vehicle whose owner or operator cannot be identified and which hits . . . You or . . . Your covered auto." Record, p. 122. The Rices do not allege that the other white car came into direct physical

contact with Dianna or her car. Therefore, on its face, the policy would not appear to provide coverage for the injuries that Dianna incurred as a result of driving off the road to avoid the on-coming car.

■ However, the Rices allege that the term "hits" is ambiguous and that we should therefore construe the policy to provide coverage. As discussed earlier, we must give terms in a contract their plain and ordinary meaning, and, therefore, we may only construe a term in a contract if that term is ambiguous. *Mutual Sec. Life,* 659 N.E.2d at 1098. We have previously held that similar language, specifically, the word "hitting" in an uninsured motorist provision providing coverage for some hit-and-run accidents, was ambiguous because it could mean both direct and indirect physical contact.[2] *Ackles,* 699 N.E.2d at 745. In that case, we construed the term "hitting" to mean either direct physical contact or indirect physical contact. *Id.* Consequently, in this case, we will follow the precedent of *Ackles,* conclude that "hits" is ambiguous, and interpret "hits" to include both direct physical contact and indirect physical contact. *See id.*

As we discussed above, the Rices do not allege that direct physical contact occurred. Therefore, we must determine whether indirect physical contact occurred. Indirect physical contact was discussed in *Allied Fid. Ins. Co. v. Lamb,* 361 N.E.2d 174, 177–180 (Ind.Ct.App.1977). In that case, we were determining whether the term "physical contact" within the hit-and-run portion of an uninsured motorist provision could be interpreted as including both

2. That provision provided:
 "Uninsured motor vehicle" means a land motor vehicle or trailer
 * * * * *
 c. Which is a hit-and-run-vehicle and neither the driver nor owner can be identi-

fied. A hit-and-run vehicle is one that causes "bodily injury" to an "insured" by hitting the "insured," a covered "auto" or a vehicle an "insured" is "occupying."
*Ackles,* 699 N.E.2d at 741.

direct physical contact and indirect physical contact. *Id.* We held that "physical contact" could include direct and indirect physical contact. *Id.* at 178. In addition, we held that indirect physical contact occurs "when an unidentified vehicle strikes an object impelling it to strike the insured automobile and a substantial physical nexus between the unidentified vehicle and the intermediate object is established." *Id.* at 179.

The Rices insist that what happened in this case should be construed as indirect physical contact. However, Dianna drove her car off the road to avoid the unidentified vehicle and her car struck the culvert. The unidentified white vehicle did not "strike" the culvert and "impel" it into Dianna's car. *See id.* The Rices argue that "[t]here is no logical difference between the situation in which the 'hit-and-run' vehicle forces an object into the insured vehicle ... and ... in which the 'hit-and-run' vehicle forces the insured vehicle into an object...." Appellant's brief, p. 19. We disagree. In *Lamb*, we specifically limited the application of indirect physical contact:

> Our holding should not be interpreted as allowing all types of indirect physical contact to satisfy the policy condition.... Neither is our holding to be interpreted as a derogation of the requirement of some type of physical contact. Recovery should not be granted under an uninsured motorist provision requiring physical contact in hit-and-run

accidents where the claimant is unable to show the existence of any type of physical contact.

*Lamb*, 361 N.E.2d at 179.

██ The policy defined an uninsured hit-and-run vehicle as a "vehicle ... which hits ... You or ... Your covered auto." Record, p. 122. We may not interpret the policy to mean something that it clearly does not or was not intended to mean, even if the failure to interpret the term limits the insurer's liability. *Mutual Sec. Life*, 659 N.E.2d at 1098. The hit-and-run vehicle did not directly or indirectly physically contact Dianna's car and, therefore, the accident that occurred does not fall within the scope of the policy provision.[3] The trial court did not err in granting summary judgment to Meridian. *See, e.g., Blankenbaker v. Great Cent. Ins. Co.*, 151 Ind.App. 693, 702–703, 281 N.E.2d 496, 501–502 (1972) (affirming summary judgment because a tire and rim did not constitute an automobile for the purposes of hit-and-run coverage in an uninsured motorist provision and because there was no evidence of a causal connection between another car and the tire and rim).

██ Nevertheless, the Rices argue that based on public policy we should construe the policy to cover this accident. First, the Rices argue that interpreting the policy to exclude coverage for Dianna's accident conflicts with the purpose of the Uninsured Motorist Act, Ind.Code § 27–7–

---

**3.** The Rices attempt to avoid the physical contact interpretation of the word "hits" by pointing out that "hits" is defined in their dictionary as "collision." Appellant's brief, p. 12. Based on the word "collision," the Rices argue that the coverage should apply, because "'collision' would not necessarily involve 'physical contact'." Appellant's brief, p. 13. However, the definition of collision is "[a] direct, violent striking together." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 262 (1981). Two things collide when they "come together with violent, direct impact." *Id.* We are embrangled by the Rices' notion that two cars could come together and violently strike one another without physically touching one another. When two cars collide, they hit one another and some form of physical contact occurs, or else there was no collision. Consequently, the substitution of the word "collision" for the word "hits" does not help the Rices' cause.

5–2. Second, the Rices argue that another state, Ohio, has interpreted a similar provision to require coverage for a similar accident. We find neither of these arguments compelling.

■ The purpose of the Uninsured Motorist Act " 'is to afford the same protection to a person injured by the uninsured motorist as he would have enjoyed if the offending motorist had himself carried liability insurance.' " *Allis*, 628 N.E.2d at 1253 (quoting *Scalf v. Globe Am. Cas. Co.*, 442 N.E.2d 8, 10 (Ind.Ct.App.1982)). We have previously held that interpreting hit-and-run provisions in auto insurance policies to not provide coverage for miss-and-run accidents does not violate Ind.Code § 27–7–5–2. *Allis*, 628 N.E.2d 1251. As a matter of fact, Ind.Code § 27–7–5–2 does not require insurance policies to cover any hit-and-run accidents, so any coverage that they do provide extends beyond the requirements of the Act. *Lamb*, 361 N.E.2d at 177, n. 1. The Rices "acknowledge the holding" of *Allis*, but "respectfully disagree with" it because it "simply misses the point." Appellant's brief, pp. 21, 22. The Rices argue that instead of following *Allis*, we should follow a 1996 decision by the Ohio Supreme Court that required coverage for miss-and-run accidents under a hit-and-run provision by rejecting the physical contact requirement and replacing it with a "corroborative evidence test." *Girgis v. State Farm Mut. Auto. Ins. Co.*, 75 Ohio St.3d 302, 662 N.E.2d 280 (1996). The corroborative evidence test places liability on an insurer for miss-and-run accidents only if an independent third party corroborates the insured's story "that the negligence of an unidentified vehicle was a proximate cause of the accident." *Id.* at 282.

■ We have reviewed the reasoning of *Allis* and see no reason to stray from its precedent today. Seven years have passed since our decision in *Allis*, and if the legislature wanted miss-and-run motorists to be included in the Act as a type of uninsured motorist for whom insurers must provide coverage, the legislature could have amended the Act to provide for such coverage. *See Allis*, 628 N.E.2d at 1255–1256. As a judiciary, we are not empowered to, and therefore we will not, rewrite the Act for the legislature. *See id.* Consequently, we reject the Rices' invitation to follow the path of the Ohio Supreme Court.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

KIRSCH, J. and MATTINGLY–MAY, J., concur.