**Robert & Lynnette ARMSTRONG, Appellants–Plaintiffs,**

**v.**

**FEDERATED MUTUAL INSURANCE COMPANY, Appellee–Defendant.**

**No. 03A05–0205–CV–222.**

Court of Appeals of Indiana.

March 19, 2003.

---

William G. Garber Columbus, IN, Attorney for Appellant.

Donald G. Orzeske, Jennifer L. Blackwell, Goodin Orzeske & Blackwell, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Robert and Lynette Armstrong's (hereinafter referred to as the Armstrongs) nineteen-year-old daughter, Hillary, was killed in an automobile accident. After recovering the limit of available insurance coverage from the driver of the car in which Hillary was a passenger, the Armstrongs sought to collect from their own insurer, Federated Mutual Insurance Company, under its underinsured motorist (UIM) coverage. A dispute arose and the matter proceeded to trial, where the jury returned a verdict in favor of Federated. The Armstrongs appeal, presenting the following restated issues for review:

1.  Did the trial court err in refusing Jury Instructions 1 and 2, tendered by the Armstrongs?

2.  Did the trial court err in reading Jury Instructions 6 and 7 to the jury?

3.  Did the trial court err in denying the Armstrongs' motion for judgment notwithstanding the verdict?

We affirm.

The facts favorable to the ruling are that on June 1, 2000, Hillary was a passenger in an automobile being driven by her boyfriend and roommate, David Redicker. Redicker lost control of the vehicle and it rolled over. Hillary was ejected from the vehicle and killed. On April 25, 2001, the Armstrongs filed a wrongful death action, naming as defendants Redicker, a highway construction company, the State of Indiana, and Federated. Their complaint was brought under the Indiana Child Wrongful Death Act, Ind.Code Ann. § 34-23-2-1, *et seq.* (West 1999). At some point prior to trial, the Armstrongs received a settlement from Redicker that represented the limits of his liability policy. Only one claim in the complaint is relevant to this appeal: the Armstrongs sought to recover, under the Federated policy's UIM provision, the portion of damages that exceeded the limits of Redicker's liability insurance policy. On June 15, 2001, Federated filed a motion to bifurcate the proceedings and the trial court granted the motion.

Trial was conducted on April 16–17, 2002. The primary issue at trial was the question of whether the Armstrongs' claim was covered by Federated's UIM provision. That question, in turn, was dependent upon two other questions, only one of which was addressed during trial. That question involved whether Hillary was an "insured person" under the contract. The second question arose by way of the motion for judgment notwithstanding the verdict, which was not filed until after trial concluded and the jury returned a verdict. The latter question was, did Robert and Lynette Armstrong suffer "bodily injury" within the meaning of the UIM policy?

The UIM portion of the policy provides: "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'insured motor vehicle' because of 'bodily injury' "[.] *Appellants' Appendix* at 140. The UIM provision defined "insured" as "You or any family member." *Id.* The "definitions" section of the Federated policy defined "family member" as follows: " 'Family member'

means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." *Id.* at 136. The following excerpt from Robert Armstrong's testimony at trial best sums up the crux of matters tried before the jury.

[Plaintiffs' counsel]: Okay, so she's a family member to that extent. The issue is whether she's a resident of your household. You believed her to be a resident of your household. Is that right?

[Armstrong]: Yes.

Q That's what you made your claim for coverage based on. That she was a resident of your household.

A Yes.

Q That was the basis on which Federated Insurance Company denied coverage, was that she was not a resident of your household.

A Yes, that's how I understand it.

*Id.* at 93–94. Simply put, Federated denied coverage upon the basis that, at the time of her death, Hillary was not a "resident" of her parents' household.

At the conclusion of trial, the jury returned a verdict in favor of Federated. In response to that verdict, the Armstrongs filed a Motion for Judgment on Evidence Not Withstanding the Jury Verdict. The trial court denied that motion and entered judgment against the Armstrongs.

1.

The Armstrongs contend that the trial court erred in rejecting two jury instructions they tendered.

■ The manner of instructing the jury is committed to the sound discretion of the trial court. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268 (Ind. Ct.App.2001). We will reverse such rulings only upon a showing of abuse of that discretion. *Id.* "The purpose of an instruc-

tion is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Id.* at 278. Even if we conclude that a trial court erred in instructing the jury, reversal is not always warranted. If we determine that the verdict would not have differed had the jury been properly instructed, such error is deemed harmless. *Id.*

■ Proposed Jury Instruction No. 1 was the first instruction that the Armstrongs contend should have been read to the jury. It stated as follows:

Residence means the place where a person has her true, fixed, permanent home and principal establishment, and to which place she has, whenever she is absent, the intention of returning.

Once acquired, residence is presumed to continue because "every man has a residence somewhere, and ... he does not lose the one until he has gained one in another place."

Establishing a new residence terminates the former residence. A change of residence requires an actual moving with an intent to go to a given place and remain there. It must be an intention coupled with acts evidencing that intention to make the new residence a home in fact. There must be the intention to abandon the old residence; the intention to acquire a new one; and residence in the new place in order to accomplish a change of residence.

*Brief of Appellants* at 14. This instruction supplied a definition of the term "resident," as used in the Armstrongs' insurance policy. Federated contends that Proposed Instruction No. 1 was properly refused because the term "resident" is neither technical in nature nor a legal term

of art, and therefore does not require a definition. We agree.

The appellant in *Hoosier Ins. Co. v. North South Trucking Supplies, Inc.*, 684 N.E.2d 1164 (Ind.Ct.App.1997) appealed the refusal of a proposed instruction defining the terms "concealment," "misrepresentation," and "fraud." Those terms were used in a contract provision that excluded payment of claims based upon those theories. We stated the applicable rule as follows: "It is generally error for a trial court to refuse to define in its instructions technical and legal phrases relevant to material issues of a lawsuit if it is properly requested to do so." *Id.* at 1174. We rejected the appellant's claim upon the following basis: "The terms are clearly understandable to any ordinary person. Furthermore, it does not appear that the jury was, in any way, confused by the terms which Hoosier claims needed definition." *Id.* at 1174.

■ Similarly, "resident" does not strike us as a term so technical in nature that a jury would require instruction to understand it. It is a term of common usage and its common meaning, i.e., "one who resides" would be known to the average juror. The same can be said of the verb "reside" from which it derives. In this context, the latter term is perhaps more significant in applying the contractual provision in question. Again, the average juror would understand that term to mean, "to dwell permanently or continuously: occupy a place as one's legal domicile." Merriam–Webster Dictionary, *at http://www.m-w.com/cgi-bin/dictionary* (February 12, 2003). Because the term "resident" is neither legal nor technical in nature, and is widely used and understood by the average juror, the trial court did not err in refusing to instruct the jury on its meaning. *Hoosier Ins. Co. v. North South Trucking Supplies, Inc.*, 684 N.E.2d 1164.

Proposed Jury Instruction No. 2 was the second proposed instruction whose rejection the Armstrongs challenge. It stated as follows:

In construing the term "resident" in insurance policies, it is given its broad meaning in "extension" cases. The case before us is an extension case because it involves the question of whether coverage should be extended beyond the named insured, Robert Armstrong, to his daughter, Hillary. Therefore the term "resident" will be given its broad meaning.

Indiana Law construing the term "resident" in insurance policies have [sic] applied to it the rule of interpretation which favors coverage of the insured.

*Brief of Appellants* at 16.

■ The stated purpose of the foregoing instruction was to aid the jury in construing the meaning of the contract provision in question. It is well established that construing the meaning of a contract provision is appropriate only when an ambiguity exists. *See Travelers Indem. Co. v. Summit Corp. of America*, 715 N.E.2d 926 (Ind.Ct.App.1999). Yet, the Amstrongs' counsel acknowledged that the contract language that they sought to aid the jury in construing was "clear and unambiguous." *Transcript* at 75. That concession notwithstanding, the Armstrongs cite *Allstate v. Neumann*, 435 N.E.2d 591 (Ind.Ct.App.1982) in support of their contention that the jury should have been instructed on the meaning of "resident" in this context.

We observe that the legal principle espoused in the instruction is by no means firmly established under Indiana law. In essence, the Armstrongs sought to instruct the jury that the term "resident" in insurance policies should be construed broadly

so as to extend coverage to the insured wherever possible. All but one of the cases cited by the Armstrongs in support of that proposition were decisions from other states, and one of *those* was reversed. *See Tencza v. Aetna Cas. and Sur. Co.*, 21 Ariz.App. 552, 521 P.2d 1010 (1974), *rev'd*, 111 Ariz. 226, 527 P.2d 97. The only Indiana case cited in support of the instruction was *Allstate v. Neumann*, 435 N.E.2d 591. In that case, the court did indeed hold that "resident" was to be "given its broad meaning in the so-called 'extension' cases," and "construed narrowly in 'exclusion' cases." *Id.* at 593. The court indicated that said principle was consistent with our courts' policy of construing terms in insurance policies so as to favor coverage of the insured. *Id.* We note, however, that no other case since then has cited *Allstate v. Neumann* for that principle, and we believe that such signals a reluctance on the part of our courts to adopt a rule that paints with too broad a brush. That is, courts must be mindful that the threshold question focuses upon whether an ambiguity exists in the first place. In this case, that requires an inquiry into whether "resident" is ambiguous, as used in the insurance policy. We have concluded that it is not. Therefore, we may not undertake the process of construing the meaning of the term. In summary, we think it better to adhere to the broad policy of aiding the jury by defining terms only when the term is so technical or ambiguous in nature as to merit such treatment.

Because the meaning of the term "resident" is unambiguous and well understood by the average juror, the trial court did not err in rejecting Proposed Jury Instruction No. 2.

### 2.

The Armstrongs contend that the trial court erred in reading Jury Instructions 6 and 7 to the jury. In arguing these issues, the Armstrongs, in effect, treat the two instructions as if they were combined to form a single instruction, and shape their argument accordingly. With one exception, we will do likewise.

■■■ The manner of instructing a jury lies largely within the trial court's sound discretion, and we review such decisions only for an abuse of discretion. *Powell v. State*, 769 N.E.2d 1128 (Ind.2002). "An instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial, and be relevant to the issues the jury must decide in reaching its verdict." *Kelley v. Watson*, 677 N.E.2d 1053, 1056 (Ind.Ct.App.1997). A party is not entitled to reversal for the giving of an instruction except upon an affirmative showing that the instructional error prejudiced the party's substantial rights. *Flake v. State*, 767 N.E.2d 1004 (Ind.Ct.App.2002).

■■ Instruction No. 6 stated: "A contract is an agreement between two or more persons that arises from an offer made by one and acceptance of the offer by another." *Appellee's Appendix* at 253. Instruction No. 7 stated: "An insurance policy is a contract between the parties, in that certain coverage was bargained for and premiums were assessed according to the coverage which was chosen by the insured. Clear and unambiguous language in an insurance policy must be given its plain and ordinary meaning, even if this results in a limitation on the insurance company's liability." *Id.* at 254. The Armstrongs challenge Instructions Nos. 6 and 7 upon grounds that they were irrelevant and confused the jury.

We are inclined to agree with the Armstrongs' assessment of the relevance of Instruction No. 6. As the Armstrongs note, there was no contested issue with respect

to the existence of an insurance policy in the first place.[1] Both parties acknowledged that there was. Apart from that question, we are at a loss to understand why the jury needed an instruction to the effect that a contract is an agreement between two or more persons that arises from an offer made by one and acceptance of the offer by another. The same can be said of the relevance of Instruction No. 7, with the exception of the concluding sentence, i.e., "Clear and unambiguous language in an insurance policy must be given its plain and ordinary meaning, even if this results in a limitation on the insurance company's liability." *Id.* This sentence served to aid the jury in understanding how it was to assign meaning to the policy provision in question.

Apart from the last sentence of Instruction No. 7, we agree that the balance of Instruction Nos. 6 and 7 were, for the most part, irrelevant to the matters the jury was called upon to decide. We cannot agree, however, that they confused the jury. The Armstrongs contend that Instruction Nos. 6 and 7 were confusing in that they "suggest[ed] to the jury that Robert Armstrong had the ability to modify the contract and do away with the resident issue." *Brief of Appellant* at 21. This confusion, the Armstrongs argue, constituted the prejudice that justifies reversal.

The Armstrongs offer nothing to support the bare assertion that the aforementioned suggestion was implicit in the instruction. For our part, we are at a loss to discern how said "confusion" would have been engendered by Instruction Nos. 6 and 7. Neither party expended any effort at trial attempting to persuade the jury that the Armstrongs were either capable of or inclined to modify the terms of the insurance policy along the lines that the Armstrongs suggest. Thus, although we agree that Instruction Nos. 6 and 7 were largely irrelevant and should not have been given to the jury, we perceive no resulting prejudice to the Armstrongs' substantial rights. Therefore, reversal on this basis is not warranted.

3.

At the conclusion of trial and after the jury had returned a verdict in Federated's favor, the Armstrongs submitted a Motion for Judgment on Evidence Not Withstanding Jury Verdict. The Armstrongs contend that the trial court erred in denying that motion.[2]

Indiana Trial Rule 50 states, in pertinent part,

(A) Judgment on the Evidence—How Raised—Effect. Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment notwithstanding a verdict. A party may move for such judgment on the evidence.

1. We do not agree, however, that the only issue at trial was "whether Hillary Armstrong was a resident of Robert and Lynette Armstrong's household." *Brief of Appellants* at 20.

2. Federated contends as an initial matter that the Armstrongs waived any claim arising under the theory that they suffered a "bodily injury". In support of this argument, they note that the claim was not presented, much less litigated, at trial. Instead, it arose for the first time after the completion of trial in the motion for judgment notwithstanding the verdict. Federated's claim has merit. In this case, however, we choose to address the Armstrongs' contention on its merits.

When reviewing a ruling on a motion for judgment notwithstanding the evidence, we apply the same standard that the trial court used in ruling on the motion below. *Hitachi Const. Machinery Co., Ltd. v. AMAX Coal Co.*, 737 N.E.2d 460 (Ind.Ct.App.2000), *trans. denied*. When the trial court considers such a motion, "it must view the evidence in a light most favorable to the nonmoving party. Judgment may be entered only if there is no substantial evidence or reasonable inferences to be drawn therefrom to support an essential element of the claim." *Id.* at 462 (quoting *Liberty Mut. Ins. Co. v. Blakesley*, 568 N.E.2d 1052, 1057 (Ind.Ct.App. 1991)). When conducting our review, we examine the evidence and reasonable inferences most favorable to the verdict from a quantitative as well as qualitative perspective. *Hitachi Const. Co., Ltd. v. AMAX Coal Co.*, 737 N.E.2d 460. "Quantitatively, evidence may fail only where there is none at all. Qualitatively, however, it fails when it cannot reasonably be said that the intended inference may logically be drawn therefrom." *Id.* at 463. Moreover, "[t]he failure of inference may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture." *Id.*

In denying the Armstrongs' motion, the trial court drew two critical conclusions. Both must be sustained in order for the denial of the Armstrongs' motion to survive appellate scrutiny. The first conclusion, unstated but implicit in the ruling, was that there was evidence to support the jury's determination that at the time of her death, Hillary did not "reside", within the meaning of the policy, in her parent's home. Thus, she was not an "insured" under the policy. The second conclusion was reflected in the following:

5. The clear and unambiguous language of the policy requires that, in order for Robert and Lynette Armstrong to be entitled to compensatory damages by way of the underinsured motorist coverage there must be a showing that they sustained "bodily injury" which was caused by an accident.

6. Neither Mr. or Mrs. Armstrong suffered bodily injury, as defined by the contract. The only bodily injury was sustained by Hillary Armstrong who was not an insured under the policy.

*Appellants' Appendix* at 15.

The Armstrongs do not separately challenge the first conclusion, but instead incorporate the discussion of that issue in their argument concerning the rejection of the jury instructions they proposed, as discussed previously in this opinion under Issue 1. They do not explicitly challenge the evidence supporting that determination, nor would such a challenge succeed. There was evidence by which a jury could reasonably conclude that Hillary was not a "resident" of her parents' home at the time of her death. Thus, we need not address that issue. The second conclusion, and the one that the Armstrongs challenge here, is a matter of contract interpretation. The Armstrongs seek a judicial declaration that Federated's policy "provide[s] coverage to the parents of a decedent child under I.C. 34–23–2–1 and that the loss of love and companionship provided by I.C. 34–23–2–1 is a bodily injury encompassed in the language of the underinsured motorist insuring agreement." *Brief of Appellants* at 22.

We are called upon to determine the meaning of the insurance policy. We interpret insurance contract provisions using the same rules of interpretation and construction as we use with other contracts. *Rice v. Meridian Ins. Co.*, 751 N.E.2d 685 (Ind.Ct.App.2001), *trans. denied*. Our goal is to enforce the intent of the parties, as reflected in the insurance contract. *Id.* We will give clear and unambiguous lan-

guage its plain and ordinary meaning, and will enforce the contract according to its terms. *Id.* Ambiguous language will be construed against the insurer. *Id.* "An ambiguity exists where the provision is susceptible to more than one reasonable interpretation." *Id.* at 688.

■ The insurance policy provided that Federated would pay "compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury.'" *Appellants' Appendix* at 140. Although Robert and Lynette Armstrong were not involved in the accident that took Hillary's life, they claimed that they suffered damages that are compensable under the insurance policy because "loss of love and companionship" is a bodily injury. We therefore must determine whether "loss of love and companionship" is a "bodily injury" within the meaning of the policy.

We begin by examining the policy's "Definitions" section. That portion of the policy defines "bodily injury" as follows: " 'Bodily injury' means bodily harm, sickness or disease, including death that results." *Id.* at 136. This language seems clear enough, and does not appear to include within its ambit emotional trauma not accompanied by physical injury. The Armstrongs contend, however, that we should look beyond the four corners of this particular insurance policy to ascertain whether "bodily injury" carries a broader meaning under Indiana case law.

We note as an initial matter that we may not look beyond the contract itself to ascertain the meaning of a term unless that term is ambiguous. "Bodily injury", as used in the policy, does not suffer from

ambiguity. "Bodily" means "of or relating to the body." Merriam–Webster Dictionary, *at http://www.m-w.com/cgi-bin/dictionary* (February 12, 2003). "Injury" means "hurt, damage, or loss sustained." *Id.* Therefore, the phrase "bodily injury" connotes physical damage to the body such as would result from an impact upon the body by a physical force. Even assuming for the sake of argument, however, that the Armstrongs are correct in asserting that we must resort to Indiana case law to glean the meaning of "bodily injury", their argument fails.

In *Medley v. Frey,* 660 N.E.2d 1079 (Ind.Ct.App.1996), *trans. denied,* the insured sought to recover for loss of consortium under the tortfeasor's automobile liability insurance policy that covered claims for "bodily injury." The phrase "bodily injury" in the *Medley* policy was defined exactly as it is in the instant case. The *Medley* court summarily rejected that argument, stating, "Loss of consortium (i.e. loss of services) is not a 'bodily injury' as defined in the policy." *Id.* at 1080. The Armstrongs' claim is for "loss of love and companionship", which is for our purposes akin to a claim for "loss of consortium." [3] Therefore, the holding in *Medley* militates against the Armstrongs' claim that loss of love and companionship is a "bodily injury."

In *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205 (Ind.Ct.App.1995), *trans. denied,* this court took the analysis a step further. In that case, the plaintiff was a child who had been molested by her school principal. She sought to recover for, among other things, the emotional trauma she suffered as a result of the molestation. The insurer denied coverage upon the basis that the

---

**3.** "Loss of consortium" is defined as "Conjugal fellowship of husband and wife, and the right of each to the company, society, co-

operation, affection, and aid of the other in every conjugal relation." *Black's Law Dictionary* 162 (Abridged 5th Ed.1983).

victim did not suffer a "bodily injury" within the meaning of the policy provision. The policy in question defined "bodily injury" in substantially the same way it is defined in the instant case.[4] We noted that the policy extended the meaning of "bodily injury" beyond physical injury when it included "sickness" and "disease" in the definition. *Id.* This conclusion was based upon the observation that "the average lay person reading the policy would not conclude that mental anguish is excluded from the ambit of 'sickness.'" *Id.* at 1211 (quoting *Lavanant v. General Accident Ins. Co. of America*, 561 N.Y.S.2d 164, 168, 164 A.D.2d 73 (1990)). As a result, the court concluded in *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, that the child could recover for emotional trauma caused by the molestation.

The holding in *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205 does not mean by extension, however, that *any* person who suffers emotional trauma has suffered a compensable "bodily injury" within the meaning of an automobile insurance policy. Such a sweeping conclusion ignores one critical factor in that case. Namely, the court's decision was based in large part upon the fact that the plaintiff's compensable emotional trauma resulted from a physical impact upon that same plaintiff. In rejecting the insurer's claim that "bodily injury" required harm such as would leave a physical manifestation of the impact (e.g., a bruise, a cut, or sensory, physical pain) the court stated:

> That a child is injured is inherent to the crime of child molestation. There is a physical violation of the child's person,

whether it involves taking hold of a child and forcing the child's hand onto one's body, as are the circumstances of this case, or a more heinous violation of the child's person. In any respect, *the emotional damage results from a physical intrusion upon the child's body and therefore is bodily injury.*

*Id.* at 1211 (emphasis supplied).

The holding in *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.* clarified that "bodily injury", as used in certain insurance policies, might include an injury that is non-physical (e.g., emotional harm) in nature, but only if said injury was the result of a direct physical impact upon the insured who seeks recovery. We do not intend here to endorse the view that loss of love and companionship is the equivalent of emotional trauma in this context, much less that it is a "bodily injury" within the meaning of the insurance policies such as the one at issue in the instant case. Rather, we note that, even if it *were* considered a bodily injury, the Armstrongs could not thereby recover under Federated's policy because they suffered no physical impact.

In summary, even assuming for the sake of argument that "loss of love and companionship" is the same as emotional trauma, and even assuming for the sake of argument that it may constitute a "bodily injury" in this context, the Armstrongs are not entitled to reversal, because neither Lynnette nor Robert suffered a physical impact in the accident that took Hillary's life. For all of the reasons set forth above, the trial court did not err in denying the Armstrongs' motion for judgment notwithstanding the verdict.

Judgment affirmed.

---

4. The phrase was defined as follows: " 'Bodily injury' means bodily injury, sickness or disease sustained during the policy period, including death at any time resulting therefrom." *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d at 1210.

MATTINGLY–MAY, J., concur.

BROOK, C.J., concurring in result as to issue 3 with opinion.

BROOK, Chief Judge, concurring in result as to issue 3.

Federated correctly observes that after the jury found in its favor on the question of coverage with respect to Hillary's "resident" status, the Armstrongs attempted to advance a new theory of recovery in their motion for judgment notwithstanding the verdict. *See* Appellee's Br. at 15; Op. at 290 n. 2. Given that the Armstrongs did not litigate the issue of whether they suffered "bodily injury," we should decline their invitation to address its merits and reserve it for another day when it is properly before us. *See Pitman v. Pitman,* 717 N.E.2d 627, 633 (Ind.Ct.App.1999) ("It is well-settled that a party cannot argue on appeal an issue which was not properly presented to the trial court. When an issue is not presented before the trial court, appellate review of that issue is waived.") (citations omitted). This court does not and should not issue advisory opinions. *See Richardson v. Calderon,* 713 N.E.2d 856, 863 (Ind.Ct.App.1999), *trans. denied* (2000).