**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**John TOZER, Georgette Tozer, Lindsay C. Tozer, and Eric Keltner and Andrea Keltner, Individually and as Guardians/Next of Friends of Kristina Keltner and Nicholas Keltner, Minors, Defendants.**

No. 1:02–CV–1189–TAB–JDT.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 23, 2003.

Richard C. Samek, Larry L. Barnard, Miller Carson Boxberger & Murphy LLP, Fort Wayne, IN, for plaintiff.

John S. Mercer, Jennifer Renee Fitzwater, Wood, Tuohy, Gleason, Mercer & Herrin, Indianapolis, IN, Nicholas Calvin Deets, F. Boyd Hovde, Hovde Law Firm, Indianapolis, IN, for defendants.

## ENTRY ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

BAKER, United States Magistrate Judge.

### I. Introduction.

Allstate Insurance Company ("Allstate") brought this declaratory judgment action to determine the rights and obligations of the parties under an automobile insurance policy issued by Allstate to Defendants John and Georgette Tozer, under which Lindsay C. Tozer (collectively, "the Tozers") was an insured person. Allstate and Defendants Eric Keltner and Andrea Keltner, individually and as guardians/next of friends of Kristina Keltner and Nicholas Keltner (collectively, "the Keltners") have filed cross-motions for summary judgment.[1] Allstate seeks a declaration that Nicholas and Kristina Keltner's claims for emotional distress are not covered by the policy because the policy limits have been paid under the "each person" limit of liability for the wrongful death of Kyle Keltner. Conversely, the Keltners seek a declaration that the claims of Kristina and Nicholas are separate "bodily injuries"

---

1. Eric and Andrea Keltner are the parents of Nicholas and Kristina Keltner. Nicholas and Kristina Keltner claim emotional distress as a result of witnessing their brother Kyle Keltner's fatal injuries.

from those of Kyle Keltner and, therefore, not subject to Kyle Keltner's "each person" limit.[2] For the reasons stated below, Allstate's motion for summary judgment is DENIED and the Keltners' motion for summary judgment is GRANTED.

## II. Summary Judgment Standard and Applicable Law.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "These same Rule 56 standards apply to cross-motions for summary judgment." *TIG Ins. Co. v. Smith,* 243 F.Supp.2d 782, 784 (N.D.Ill.2003), *citing International Brotherhood of Electrical Workers, Local 176 v. Balmoral Racing Club, Inc.,* 293 F.3d 402, 404 (7th Cir.2002). "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 983 (7th Cir.2001), *quoting Hendricks–Robinson v. Excel Corp.,* 154 F.3d 685, 692 (7th Cir.1998). *See also Eaton v. Onan Corp.,* 117 F.Supp.2d 812, 818 (S.D.Ind. 2000).

As this matter comes before the Court pursuant to diversity jurisdiction, the Court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 669 (7th Cir.2001). Because neither party raised a conflict of law issue, the applicable law is that of Indiana, the state where this Court sits. *Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8,* 314 F.3d 895, 900 (7th Cir.2002). "Under Indiana law, the interpretation of an insurance contract is a matter of law for the courts to determine." *Schenkel & Shultz, Inc. v. Homestead Ins. Co.,* 119 F.3d 548, 550 (7th Cir.1997), *citing Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992). Therefore, summary judgment is particularly appropriate. *American Family Mut. Ins. Co. v. Hall,* 764 N.E.2d 780, 784 (Ind. Ct.App.2002). "Although ambiguities are construed in favor of the insured, clear and unambiguous policy language must be given its ordinary meaning." *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997).

## III. Background.

On January 31, 2001, Allstate had in effect an automobile insurance policy, number 032740469 (the "Policy"), issued to Defendants John and Georgette Tozer. The Policy named Lindsay Tozer as an insured person. The Policy's declarations page provided for automobile liability insurance, bodily injury coverage of $100,000 for each person and $300,000 for each occurrence. Additionally, the Policy defined "bodily injury" as "physical harm to the body, sickness, disease or death ...." [Compl., Ex. A, Policy, p. 3]. With respect

---

2. Allstate notes that the Keltners' cross-motion for summary judgment is untimely, having been filed on August 25, 2003, well past the dispositive motion deadline of June 30, 2003. However, all parties agree that the facts in this case are undisputed and that the issues may be resolved as a matter of law.

Allstate did not move to strike this motion and has not been prejudiced having fully addressed the issues raised by the Keltners' motion. [*See* Docket No. 41, n. 1]. Therefore, in the interest of judicial economy and in its discretion, the Court will consider Plaintiff's cross-motion for summary judgment.

to limits of liability, the Automobile Liability Insurance Bodily Injury Liability–Coverage AA of the Policy provided:

> The limits shown on the Policy Declarations are the maximum we will pay for any single accident involving an insured auto. The limit stated for each person for bodily injury is our total limit of liability for all damages because of bodily injury sustained by one person, including all damages sustained by anyone else as a result of that bodily injury. Subject to the limit for each person, the limits stated for each action is our total limit of liability for all damages for bodily injury.

[Compl., Ex. A., Policy, p. 8].

On January 3, 2001, Lindsay Tozer was operating an automobile insured under the Policy. Kyle Keltner and Defendants Kristina and Nicholas Keltner were passengers in the vehicle operated by Lindsay Tozer. The vehicle struck a telephone pole and, as a result of the collision, Kyle Keltner sustained personal injuries and subsequently died at the hospital. Allstate settled the Kyle Keltner's wrongful death claim on or about September 10, 2001 for $1,100,000.00.[3] This settlement and release did not specifically release the claims of Nicholas and Kristina Keltner against Lindsay Tozer.

On February 22, 2002, Nicholas and Kristina Keltner, by their parents and next friends Eric and Andrea Keltner, filed a complaint in the Hamilton Superior Court against Defendant Lindsay Tozer relating to the accident which occurred on January 3, 2001. Allstate retained Smith, Maley and Douglas ("the Firm") to defend Lindsay Tozer in this action and the Firm entered its appearance on March 21, 2002. Thereafter, Allstate filed the instant action for declaratory judgment on July 31, 2002. Allstate did not send Lindsay Tozer a reservation of rights letter prior to filing the declaratory judgment action.

## IV. Discussion.

Allstate claims that it is entitled to declaratory judgment on two distinct grounds. First, Allstate claims that, under the Policy, the emotional distress claims of Nicholas and Kristina Keltner fall under the "each person" Policy limit for the death of Kyle Keltner. In other words, Nicholas and Kristina Keltner's claims are not covered by the Policy because the Policy limits have been reached with respect to their claims through the settlement of Kyle Keltner's wrongful death claim. Second, Allstate claims that it "has not waived and is not estopped from asserting that the emotional distress claims of Kristina and Nicholas Keltner as a result of seeing the death of their brother are included within the single limit of liability for bodily injury for that death as a result of Allstate's defense of [that claim] without a reservation of rights." [Docket No. 31, p. 1]. Because the Court resolves the first issue in favor of the Defendants, the Court need not address the second.

Whether emotional distress claims like those of Kristina and Nicholas Keltner's fall under the "each person" liability limit of the decedent is one of first impression; no Indiana court has addressed this particular issue.[4] The parties correctly note

---

**3.** According to Allstate, the settlement amount included $100,000 of liability limits under the Policy at issue and $1,000,000 under a separate single limit Personal Umbrella Policy issued by Allstate to the Tozers.

**4.** While neither party has requested the issue be certified to the Indiana Supreme Court under Indiana Rule of Appellate Procedure 64, the Court considered whether this is appropriate. The only federal district court decision to address this issue, albeit under Florida law, was ultimately certified to the Florida

that those jurisdictions that have addressed similar questions are split, forming two camps with diametrically opposed conclusions. One camp, favoring Allstate's position, concludes that under similar policies, damages for emotional distress are included within the per person limit of liability of the decedent or physically injured person. *See Farm Bureau Ins. Co. of Nebraska v. Martinsen*, 265 Neb. 770, 659 N.W.2d 823, 827–28 (2003) (finding that "a 'bodily injury' that could give rise to a separate per-person claim must be a physical, as opposed to a purely emotional, injury."); *Bentley v. Progressive Ins. Co.*, 2002 WL 31681997, *4–7 (Ohio Ct.App. 2002) (emotional injuries do not constitute "bodily injury" and even if they did, policy limited coverage to per-person limit); *Mullen v. Walczak*, 262 Wis.2d 708, 664 N.W.2d 76, 81 (2003) ("Under the terms of the policy, any damages sustained by all persons as the result of [the decedent's] death are covered by her 'per person' limit. Consequently, the emotional distress suffered by [the insured], solely as the result of witnessing his wife's death, must be compensated out of her 'per person' limit, not [the insured's]."); *Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1333 (M.D.Fla.1998) (emotional distress is not a "bodily injury"); *Estate of Gocha v. Shimon*, 215 Wis.2d 586, 573 N.W.2d 218, 221 (1997) (bystander emotional distress is not "bodily injury" under the policy); *McNeill v. Metropolitan Property & Liability Ins. Co.*, 420 Mass. 587, 650 N.E.2d 793, 795 (1995) ("plaintiff's emotional distress claim 'is a by-product of and entirely dependent upon the bodily injury to his daughter'" and therefore subject to "per person" limit. Also finding that "emotional distress is not a bodily injury."); *First Ins. Co. Of Hawai'i, Ltd., v. Lawrence*, 77 Hawai'i 2, 881 P.2d 489, 495–504 (1994) (non-witness emotional distress claims are derivative and, therefore, included within the "each person" liability limit); *Bowman v. Holcomb*, 83 Ohio App.3d 216, 614 N.E.2d 838, 840–41 (1992) (emotional distress is not "bodily injury").

Conversely, the opposite camp, favoring the Defendants' position, concludes that emotional distress claims like those of the Keltners are separate and distinct claims, not subject to the "each person" liability limit of the respective insurance policy. *See Polowitzer v. Uriano*, 263 Conn. 633, 821 A.2d 762, 764–65 (2003) (holding that because "bodily injury" included emotional distress under the policy, the plaintiff may recover damages for the emotional distress under the separate "each person" limit); *State Farm Mut. Auto. Ins. Co. v. Lawrence*, 26 P.3d 1074, 1077–79 (Alaska 2001) (finding that because emotional distress claims were "bodily injury", defendants were eligible for separate policy limits); *Stewart v. State Farm Mut. Auto. Ins. Co.*, 341 S.C. 143, 533 S.E.2d 597, 602 (2000) ("Where negligent infliction of emotional distress is proven, the damages arising from such tort constitute a bodily injury to which a separate 'per person' limit of in-

Supreme Court by the Eleventh Circuit. *See Allstate Ins. Co. v. Clohessy*, 32 F.Supp.2d 1333 (M.D.Fla.1998), *question certified*, 199 F.3d 1293 (11th Cir.2000), *voluntarily dismissed*, 763 So.2d 1042 (Fla.2000). However, the Seventh Circuit has counseled that "use of the procedure is not without costs to the litigants and to the state court which already must contend with a crowded docket of its own. Therefore, a respect for the burdens of our colleagues on the state bench and con-

cern for the litigants before us counsel that we approach the decision to certify with circumspection." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671 (7th Cir.2001) (outlining several factors to consider when deciding whether to certify to a state supreme court). While this case is technically qualified for certification, the Court believes that Indiana case law provides sufficient guidance to decide this matter without burdening the Indiana Supreme Court. *See Id.* at 673.

surance applies."); *Erie Ins. Group v. Shue,* 741 A.2d 803, 807 (Pa.Super.Ct.1999) (emotional distress claim from witnessing the death of his mother was a separate non-derivative claim eligible for separate "per person" limit under the policy); *Anthem Casualty Ins. Co. v. Miller,* 729 A.2d 1227 (Pa.Super.Ct.1999) (emotional distress from witnessing accident constituted separate claim and not subject to decedent's "per person" liability limit); *Auto Club Ins. Assoc. v. Hardiman,* 228 Mich. App. 470, 579 N.W.2d 115, 117–18 (1998) (claim for negligent infliction of emotional distress was separate, not derivative, claim and therefore not subject to same "per person" limit as the decedent's claim); *Treichel v. State Farm Mut. Auto. Ins. Co.,* 280 Mont. 443, 930 P.2d 661, 665 (1997) (emotional distress from witnessing accident which killed her husband was independent injury, not subject to the "per person" limitation on her husband's claim); *Crabtree v. State Farm Ins. Co.,* 632 So.2d 736, 738 (La.1994) ("wife's mental anguish constitutes a separate bodily injury under the policy entitling her to her own per person policy limit subject to the aggregate per accident limit."); *Pekin Ins. Co. v. Hugh,* 501 N.W.2d 508 (Iowa 1993) (bystander emotional distress was "bodily injury" for purposes of insurance coverage); *Wolfe v. State Farm Ins. Co.,* 224 N.J.Super. 348, 540 A.2d 871, 873–74 (1988) ("bodily injury" includes emotional distress and emotional distress is not a derivative claim); *Employers Casualty Ins. Co. v. Foust,* 29 Cal.App.3d 382, 105 Cal.Rptr. 505, 508–09 (1972) ("bodily injury" under the policy included emotional distress resulting in physical injury).

Allstate relies on *Medley v. Frey,* 660 N.E.2d 1079 (Ind.Ct.App.1996), for the proposition that Indiana courts would also find that emotional distress claims like those of the Keltners would be included in the "each person" limit of liability for the decedent's wrongful death claim. [Docket No. 31, pp. 6–7]. The *Medley* court held that plaintiff's loss of consortium claim arose out of the bodily injury suffered by her husband and, therefore subject to her husband's "per person" policy limit. *Medley,* 660 N.E.2d at 1081. Notably, the court found that loss of consortium was not a "bodily injury" under the policy. In fact, the policy specifically stated that "[t]he limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, *loss of services* or death, arising out of 'bodily injury' sustained by any one person in the accident." *Id.* at 1080–81 (emphasis added).

■ Allstate's reliance on *Medley* for the conclusion that Kristina and Nicholas Keltner's claims would fall under Kyle Keltner's "each person" limit is unpersuasive. To the contrary, *Medley* suggests the opposite conclusion. *Medley* involved a claim for loss of consortium which has long been held a derivative action under Indiana law. *See Durham ex rel. Estate of Wade v. U–Haul Intern.,* 745 N.E.2d 755, 764 (Ind.2001). "By [derivative] we mean that if the spouse's cause of action for personal injury fails, the loss of consortium claim falls with it." *Id.* By contrast, in Indiana, a claim for emotional distress is a distinct, non-derivative claim. *See City of Anderson v. Weatherford,* 714 N.E.2d 181, 185 (Ind.Ct.App.1999) ("Indiana now recognizes a separate cause of action for intentional infliction of emotional distress, without the need for an accompanying tort.") Allstate argues that, "as in *Medley,* the emotional distress damages sought by Nicholas and Kristina Keltner were sustained *as a result of the death of Kyle Keltner* and are therefore subject to the per person limit paid on the Kyle Keltner wrongful death claim." [Docket No. 41, p.

5]. However, because Indiana recognizes a distinct cause of action for emotional distress which is not contingent on the outcome of other claims, the Court believes that the Indiana Supreme Court would not follow those cases which have held that emotional distress claims are derivative or dependent on the bodily injury to the decedent (or physically injured) and therefore subject to the decedent's per person limit. *See, e.g., Farm Bureau Ins. Co. of Nebraska,* 659 N.W.2d at 828; *Bentley,* 2002 WL 31681997, *7; *Mullen,* 664 N.W.2d at 81; *Allstate Ins. Co. v. Clohessy,* 32 F.Supp.2d at 1336–37; *Estate of Gocha,* 573 N.W.2d at 221; *McNeill,* 650 N.E.2d at 795; *First Ins. Co. of Hawai'i, Ltd.,* 881 P.2d at 496–97.

This is especially true given *Medley's* conclusion that if loss of consortium, a derivative claim, were included in the definition of "bodily injury," then a separate per person limit of liability would apply. Specifically, the *Medley* court noted:

> Where the automobile liability policy includes loss of consortium or loss of services in the definition of "bodily injury," courts have logically concluded that the deprived-spouse's loss of consortium claim is a distinct "bodily injury" and is not subject to the per person liability limit applicable to the injured-spouse, but is a separate "bodily injury" within the meaning of the policy.

*Medley,* 660 N.E.2d at 1081 n. 1. In other words, the key question is not whether the emotional distress is derivative or a by-product of another's injury, it is whether emotional distress falls within the policy definition of "bodily injury." Therefore, if, under the terms of the policy, emotional distress is included within the definition of "bodily injury," a separate "per person" limit would likewise apply. Indiana courts have provided sufficient guidance on this issue.

This guidance is found in *Wayne Township Bd. Of School Comm'rs v. Indiana Ins. Co.,* 650 N.E.2d 1205 (Ind.Ct.App. 1995), a case involving the interpretation of an insurance policy relating to an emotional distress claim resulting from child molestation. In *Wayne Township,* the Indiana Court of Appeals stated, "We agree with the majority of jurisdictions holding that the term 'bodily injury' does not include emotional damage that does not arise from a bodily touching. However, bodily touching is inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury." *Id.* at 1210. In that case, the insurance company argued that the term "bodily injury" referred only to physical injuries and did not include emotional distress. Holding otherwise, the court noted that:

> the policy extends the meaning of "bodily injury" beyond physical injury, and includes sickness and disease in the definition. Therefore, the policy covers more than a physical, or bodily injury. As noted by one court, the average lay person reading the policy would not conclude that mental anguish is excluded from the ambit of "sickness."

*Id.* at 1210–11. The court found "pivotal" the fact that the emotional distress claim at issue in that case resulted from bodily contact and therefore concluded the child's emotional distress fell within the definition of "bodily injury" under the policy. *Id.* Notably, in reaching this conclusion, the court found "[t]his is in harmony with Indiana law governing causes of action for infliction of emotional injury. In order to recover for emotional injury, one must sustain a physical impact but need not suffer a physical injury." *Id.* at 1211, n. 3, *citing Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind.1991). Like the policy in *Wayne Township,* Allstate's Policy also extends

beyond physical injury by including disease and sickness within its definition of "bodily injury." By logical extension, the Court believes that if Kristina and Nicholas Keltner's claims meet the standard for actionable emotional distress under Indiana law, their claims would fall under the Policy's definition of "bodily injury."

More recently, the Indiana Court of Appeals found that:

> The holding in *Wayne Township Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205 does not mean by extension, however, that any person who suffers emotional trauma has suffered a compensable "bodily injury" within the meaning of an automobile insurance policy. Such a sweeping conclusion ignores one critical factor in that case. Namely, the court's decision was based in large part upon the fact that the plaintiff's compensable emotional trauma resulted from a physical impact upon that same plaintiff.

*Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 293 (Ind.Ct.App.2003). The Court agrees that under Indiana law, not all persons who suffer from emotional distress as a result of witnessing a loved one's injury or death suffer a "bodily injury" as defined by Allstate's Policy. There must be an impact and, therefore, truly "bystander" claims for emotional distress would not fall under the Policy's definition of "bodily injury." However, this conclusion does not resolve the instant matter as it is undisputed that both Kristina and Nicholas Keltner were involved in the accident which led to Kyle's death, and therefore suffered an impact.

Allstate argues that while there is no dispute that Kristina and Nicholas Keltner suffered a physical impact, their emotional distress claims arise out of witnessing their brother's death and not as a result of the physical impact, therefore not within the ambit of *Wayne Township* and *Armstrong*. [Docket No. 31, p. 15]. The Keltners counter, arguing that *Shuamber* controls. While not involving the interpretation of an insurance contract, *Shuamber* involved facts substantially similar to those in the case at hand. In that case, the plaintiffs sought emotional distress damages as a result witnessing a member of their family sustain fatal injuries. Notably, the plaintiffs did not "seek recovery for emotional trauma arising out of or caused by their own physical injuries." *Id.* at 453. The court noted that, under the then-current law, plaintiffs had not stated a claim for emotional distress, noting that "[a]lthough they were involved in a physical impact (element 1), as a result of which they sustained physical injury (element 2), the emotional trauma was not a direct result of their physical injury. Thus, element 3, mental trauma caused by and arising out of the physical injury, is absent." *Id.* at 454. The *Shuamber* court then reexamined and modified the so-called "impact rule," holding:

> When, as here, a plaintiff sustains a direct impact by the negligence of another and, *by virtue of that direct involvement sustains an emotional trauma* which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma *without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.*

*Id.* at 456 (emphasis added).

Applying this background of Indiana law to the case at hand, the Court believes that the Indiana Supreme Court would find that the emotional distress claims of Nicholas and Kristina Keltner fall within the definition of "bodily injury" in the Allstate

 

Policy. It is true that Kristina and Nicholas Keltner seek emotional distress not because of their own physical injuries, but because of witnessing their brother's fatal injuries. However, their claims are substantially similar to those in *Shuamber*. As Allstate correctly points out, the *Armstrong* court noted that "bodily injury," as the term is used in insurance policies, "might include an injury that is non-physical (e.g., emotional harm) in nature, but only if said injury was the result of a direct physical impact upon the insured who seeks recovery." *Armstrong*, 785 N.E.2d at 293; [Docket No. 31, p. 15]. Under *Shuamber*, the Keltners meet this test. Like the plaintiff in *Shuamber*, Kristina and Nicholas Keltner sustained a direct impact by being in the vehicle when it struck the telephone pole. They claim to have suffered emotional distress as a result of their involvement in the impact, i.e. witnessing their brother's fatal injuries. Therefore, under Indiana law, Kristina and Nicholas Keltner have stated an actionable claim for emotional distress and, therefore, fall within the Policy's definition of "bodily injury."

In summary, because Nicholas and Kristina Keltner's claims meet the requirements for negligent infliction of emotional distress under Indiana law, and because the Policy's definition of "bodily injury" extends beyond that of physical ailments, Kristina and Nicholas Keltner's claims for emotional distress are bodily injuries under Allstate's Policy. Furthermore, the Court finds that, under Indiana law, Kristina and Nicholas Keltner's distinct bodily injury claims are not subject to Kyle Keltner's "each person" limit. Rather, each claim would be subject to its own separate

"each person" limit. Should Kristina and Nicholas Keltner prevail on their claims in state court, there is $100,000 of coverage remaining on each of their claims.

## V. Conclusion.

Plaintiff's motion for summary judgment is DENIED. The Keltner Defendants' motion for summary judgment is granted. Judgment shall be entered accordingly, each side to bear its own costs and fees.[5]

---

5. The Court notes that only the Keltners filed a cross-motion for summary judgment. However, because the Court's decision with respect to the Keltners necessarily resolves those issues relating to the Tozers' counterclaim for declaratory relief, judgment shall be entered in favor of all Defendants.