Anthony HAAS and Wanda Haas, individually and as surviving parents of Phillip A. Haas, a deceased minor, Plaintiffs,

v.

AUTO–OWNERS INSURANCE COMPANY, Defendant.

No. 3:08–cv–001–RLY–WGH.

United States District Court,
S.D. Indiana,
Evansville Division.

Aug. 25, 2009.

Stephen Hensleigh Thomas, Gerling Law Offices, Evansville, IN, for Plaintiffs.

J. Todd Spurgeon, Kightlinger & Gray, LLP, New Albany, IN, for Defendant.

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT**

RICHARD L. YOUNG, District Judge.

Phillip Haas was killed in a single-vehicle accident in a vehicle allegedly driven by Amber Myers. Following his death, Phillip Haas' parents, Anthony and Wanda Haas, filed a wrongful death claim in state court against Amber Myers and her parents. After Auto–Owners refused to waive subrogation in the underlying state court action, Anthony and Wanda Haas filed the present lawsuit. In this action, Anthony and Wanda Haas, individually and as the surviving parents of Phillip Haas (collectively "Plaintiffs"), allege that Auto–Owners' refusal to waive subrogation "was done for purposes other than subrogation." Plaintiffs also seek underinsured motorist benefits for the death of Phillip Haas under the Auto–Owners policies issued to Anthony Haas.

Auto–Owners filed a motion for summary judgment on all claims set forth in Plaintiffs' Complaint on January 30, 2009. The Plaintiffs filed a cross-motion for partial summary judgment on the issue of underinsured motorist coverage under the Auto–Owners policies issued to Anthony Haas. To aid the court in understanding the issues presented, the court heard oral argument from the parties on July 21, 2009. Having read and reviewed the supporting and opposing briefs and the applicable law, and having heard the oral argument of the parties, the court hereby **GRANTS** in part, and **DENIES** in part, Auto–Owners' Motion for Summary Judgment, and **DENIES** the Plaintiffs' Cross–Motion for Partial Summary Judgment.

**I. Summary Judgment Standard of Review**

Summary judgment is appropriate where the pleadings, affidavits, and other materials on file demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R.CIV.P. 56(c). Jurisdiction of this case is based upon diversity of citizenship, and, as all material events occurred in Indiana, the parties agree that Indiana substantive law

applies. "Indiana courts have recognized that '[c]onstruction of an insurance policy is a question of law for which summary judgment is particularly appropriate.'" *Myles v. General Agents Ins. Co. of Am., Inc.,* 197 F.3d 866, 868 (7th Cir.1999) (quoting *Piers v. American United Life Ins. Co.,* 714 N.E.2d 1289, 1290 (Ind.Ct. App.1999)).

▄▄▄ The interpretation of an insurance policy is subject to the same rules of construction and interpretation as any other contract. *Amerisure, Inc. v. Wurster Constr. Co., Inc.,* 818 N.E.2d 998, 1001 (Ind.Ct.App.2004); *Myles,* 197 F.3d at 868 (applying Indiana law). Thus, the goal in interpreting an insurance policy is to ascertain and enforce the parties' intentions as expressed in the written contract, reading the "four corners" of the document as a whole. *Am. Family Ins. Co. v. Globe Am. Cas. Co.,* 774 N.E.2d 932, 935 (Ind.Ct. App.2002). If the terms of an insurance policy are clear and unambiguous, the court gives that language its plain and ordinary meaning and enforces the policy according to its terms. *Castillo v. Prudential Prop. and Cas. Ins. Co.,* 834 N.E.2d 204, 206 (Ind.Ct.App.2005); *Rice v. Meridian Ins. Co.,* 751 N.E.2d 685, 688 (Ind.Ct.App.2001). If, however, the language of the policy is ambiguous, the court construes the policy against the insurer. *Rice,* 751 N.E.2d at 688. Here, as shown below, there is no dispute as to the meaning of the underinsured motorist provisions at issue in this case.

## II. Background

### A. Facts Related to the Accident at Issue

This matter arises out of an incident which occurred on January 14, 2006, near Jasper, Indiana. On that date, Phillip Haas was a passenger [1] in a vehicle operated by Amber Nicole Myers ("Amber Myers"). The vehicle was involved in an accident, resulting in Phillip Haas' death. The vehicle in question was owned by Amber Myers' parents, Ken and Kathy Myers, and insured by Progressive Insurance ("Progressive").

Anthony Haas, the father of Phillip Haas, maintained a policy of automobile insurance with Auto–Owners, policy number 46–276–842–00. (Defendant's Ex. A, Indiana Uninsured and Underinsured Motorist Coverage, form 79304 (10–96) ("Defendant's Ex. A")). He also maintained an executive umbrella insurance policy with Auto–Owners, policy number 96–593–737–04. (Defendant's Ex. B, Indiana Uninsured and Underinsured Motorist Coverage, form 26428 (12–01) ("Defendant's Ex. B")). Progressive tendered the underlying limits, $50,000, of its policy on the Myers' vehicle, and on October 26, 2007, counsel for Plaintiffs forwarded notification of that offer to Auto–Owners. In that notification, counsel for Plaintiffs notified Auto–Owners that it had thirty (30) days to advance payment of those limits to retain its subrogation rights. Plaintiffs' counsel requested to be notified whether Auto–Owners wished to advance that amount or waive its subrogation rights. On November 13, 2007, Auto–Owners advanced those limits in order to protect any subrogation interests in this matter. On January 2, 2008, the Plaintiffs filed the instant Complaint under Indiana's Injury or Death of a Child Statute (the "Child Wrongful Death Statute") to recover damages for, *inter alia,* their loss of love and companionship. *See* Ind.Code § 34–23–2–1(e)(2) ("(e) In an

---

1. The identity of the driver of the Myers' vehicle at the time of the accident remains a disputed issue between the parties. In fact, it is the central issue in the underlying state court action. For purposes of analyzing the coverage issue, however, the court will presume that Phillip Haas was the passenger.

action to recover for the death of a child, the plaintiff may recover damages: (2) for the loss of the child's love and companionship...."); *see also Ellenwine v. Fairley, D.O.,* 846 N.E.2d 657, 661 (Ind.2006) (citing *Bailey v. Martz,* 488 N.E.2d 716, 723 (Ind.Ct.App.1986) (finding that the Child Wrongful Death Statute provides the only cause of action for the wrongful death of a child)).

Anthony Haas and Wanda Haas are the natural father and mother of Phillip Haas. Anthony Haas and Wanda Haas divorced in March 2000 and shared joint custody of Phillip Haas. At the time of the accident, Phillip Haas was residing with his father, Anthony Haas, in Jasper, Indiana.

**B. Policy Provisions**

The Automobile Insurance Policy provides:

6. **INDIVIDUAL NAMED INSURED**

 If the first named insured in the Declarations is an individual, the coverage provided by this endorsement is extended as follows:

 a. **We** will pay compensatory damages **you** are legally entitled to recover:

 (1) from the owner or operator of any **uninsured automobile** or an **underinsured automobile;**

 (2) for **bodily injury you** accidentally sustain and which arises out of the ownership, maintenance or use of the **uninsured automobile** or **underinsured automobile** when **you** are a pedestrian or while occupying an **automobile you** do not own which is not covered by **SECTION II—LIABILITY COVERAGE** of the policy.

 b. The coverage extended in 6.a. above is also afforded to a **relative** who does not own an **automobile.**

(Defendant's Ex. A at 5–6).

SECTION I—DEFINITIONS

2. **Bodily injury** means physical injury, sickness or disease sustained by a person including resulting death of that person.

(*Id.,* Insuring Agreement, at 1).

\* \* \*

9. **Relative** means a person who resides with **you** and who is related to **you** by blood, marriage, or adoption. **Relative** includes a ward or foster child who resides with you.

(*Id.* at 1–2).

\* \* \*

12. **You** and **your** means the first individual named insured shown in the Declarations and if an individual, **your** spouse who resides in the same household.

(*Id.* at 2).

Anthony Haas is the named insured shown in the Declarations. (*Id.* at 1).

The parties agree that the Myers' automobile meets the definition of an underinsured motor vehicle under the terms of the Automobile Insurance Policy.

Anthony Haas also owned an Executive Umbrella Policy which provided that Auto–Owners would pay "compensatory damage to an injured person afforded coverage by an underlying policy...." The underlying policy is the Automobile Policy above. (Defendant's Ex. B at 1–2).

Both the Automobile and the Executive Umbrella Policy contain subrogation provisions which essentially mirror Indiana's Subrogation Statute, Indiana Code § 27–7–5–6. (Defendant's Ex. A at 6; Defendant's Ex. B at 3–4).

## III. Discussion

### A. Underinsured Motorist Claim

The Plaintiffs seek underinsured motorist benefits under the Auto–Owners Automobile Liability and Executive Umbrella policies (collectively "the policies") for the death of their minor son, Phillip Haas. The Plaintiffs contend that Phillip Haas was a "relative" of Anthony Haas who suffered bodily injury as a result of the accident involving the Myers' underinsured automobile, and that therefore, he is an "insured" entitled to underinsured motorist benefits under the policies at issue in this case.

Auto–Owners' position is that the policy only covers bodily injury "you" sustain, and Phillip Haas' death is not "bodily injury" sustained by either Anthony or Wanda Haas. Moreover, Anthony and Wanda Haas are not legally entitled to recover damages under the Child Wrongful Death Statute because wrongful death claims in Indiana are independent claims of the survivors. As such, Plaintiffs' emotional injuries are not encompassed within the definition of "bodily injury." Therefore, Auto–Owners argues, the Plaintiffs may not recover the underinsured motorist benefits at issue in this case.

The issue raised by Auto–Owners—whether the parents of a deceased minor child may recover underinsured motorist benefits under the Child Wrongful Death Statute where the minor child meets the definition of an "insured" under the underinsured motorist provision of the automobile liability policy at issue—is one of first impression in Indiana. Both parties cite *Armstrong v. Federated Mutual Ins. Co.*, 785 N.E.2d 284 (Ind.Ct.App.2003), *trans. denied*, 804 N.E.2d 750 (2003), in support of their respective positions, and thus, the court begins its discussion with a synopsis of that case.

In *Armstrong*, the plaintiffs' nineteen-year-old daughter, Hillary, was killed in an automobile accident. *Id.* at 286. The daughter was a passenger in a vehicle driven by her boyfriend. *Id.* After recovering the limit of available insurance coverage from the driver of the vehicle, the Armstrongs sought to recover underinsured motorist benefits under their automobile liability policy issued by Federated Mutual Insurance Company ("Federated") under Indiana's Child Wrongful Death Statute. *Id.*

The issue tried to the jury was whether Hillary was an "insured person" under the policy. *Id.* The jury found that she was not, and returned a verdict in favor of Federated. *Id.* at 287. The Armstrongs then filed a motion for judgment notwithstanding the verdict, raising a new issue: whether the Armstrongs suffered "bodily injury" within the meaning of the underinsured motorist provision of the Federated policy. *Id.* at 286, 291. In denying the motion, the trial court implicitly found that Hillary was not a "resident" of the plaintiffs' household at the time of the accident, and thus, she was not an insured under the underinsured motorist provision of the policy. *Id.* at 291. The trial court also found that the Armstrongs were not entitled to compensatory damages because they did not suffer "bodily injury" within the underinsured motorist provision of the policy. *Id.* at 291.

The Indiana Court of Appeals affirmed the rulings of the trial court. With respect to Hillary's entitlement to recovery, the Court found that there was sufficient evidence to find that she was not a "resident" of the plaintiffs' household, and thus, was not an insured under the policy. *Id.* With respect to the Armstrong's independent claim, the Court held emotional damages such as those for loss of love and companionship under the Child Wrongful Death Statute do not constitute "bodily injury" within the meaning of the underinsured motorist provision of the Federated policy

absent "a physical impact in the accident that took Hillary's life." *Id.* at 292–93.

*Armstrong's* holding has been reaffirmed by the Indiana Supreme Court in three recent decisions. *See State Farm Mut. Auto. Ins. Co. v. Jakupko,* 881 N.E.2d 654 (Ind.2008) (holding the emotional trauma suffered by wife and children met the definition of "bodily injury" under State Farm's underinsured motorist provision where they were involved in the automobile accident that severely injured the husband/father); *State Farm Mut. Auto. Ins. Co. v. D.L.B. ex rel. Brake,* 881 N.E.2d 665 (Ind.2008) (holding that the emotional trauma suffered by a boy who witnessed his cousin's fatal injuries did not meet the definition of "bodily injury" because the boy did not suffer a physical impact). The most recent decision, *Bush v. State Farm Mut. Auto. Ins. Co.,* 905 N.E.2d 1003 (Ind. 2009), merits discussion.

In that case, the Bushes' fifty-six year-old son, Leonard, was killed as a passenger in a single-vehicle accident in New Mexico. *Id.* at 1004 and n. 1. The driver's negligence caused the accident and he was uninsured. *Id.* at 1004. The plaintiffs, who were not involved in the accident, sought to recover uninsured motorist benefits[2] under their State Farm automobile liability policy purchased in Indiana. *Id.* After State Farm denied their claim, the Bushes brought suit claiming that they sustained damages arising out of the conduct of an uninsured motorist, and that State Farm was liable for breach of the insurance agreement. *Id.* State Farm counterclaimed, seeking a declaratory judgment that its policy provided no coverage for Leonard's death because no "insured" sustained "bodily injury." *Id.*

The trial court granted summary judgment to State Farm on grounds that Leonard did not meet the definition of a "relative" under the policy, and therefore was not an "insured." *Id.* The trial court did not address the Bushes' additional claim that State Farm's policy violated the uninsured motorist statute. *Id.* at 1005.

The Indiana Court of Appeals reversed, holding that State Farm's exclusion of coverage for Leonard violated Indiana's uninsured motorist statute. *Bush v. State Farm Mut. Auto. Ins. Co.,* 882 N.E.2d 821, 822 (Ind.Ct.App.2008), *reh'g denied.* The Court of Appeals reasoned that the Bushes were insureds who were legally entitled to recover damages for their son's death. *Id.* at 825. The dissent concluded that *Armstrong* controlled the case and found that State Farm's limitation of coverage to bodily injury sustained by an insured was valid. *Id.* at 825–26.

The Indiana Supreme Court granted transfer and held that State Farm's uninsured motorist provision, requiring that bodily injury be sustained by an insured, did not violate Indiana's uninsured motorist statute, Indiana Code § 27–7–5–2. *Bush,* 905 N.E.2d at 1005–08. In reaching that conclusion, the Court analyzed the uninsured motorist statute, which contemplates coverage only for the "insured's" bodily injury, and found that State Farm's policy was consistent with the statute. *Id.* at 1005. The Court rejected the Bushes' claim that the policy's definition of "bodily injury" was ambiguous, noting that their contention was foreclosed by *Jakupko.* *Id.* The Court also cited previous Indiana cases, including *Armstrong,* which supported the validity of State Farm's requirement that bodily injury be sustained by an insured. *Id.* at 1006. Finally, the Court noted that its decision was consistent with the public policy underlying the

---

**2.** The Court noted that the complaint did not set out whether the Bushes' claim was brought under the Adult Wrongful Death Statute, Indiana Code § 34–23–1–2, or under another theory. 905 N.E.2d at 1004.

uninsured motorist statute and the substantial majority of other states that had decided the issue. *Id.* at 1006–08.

 The court finds that were the Indiana Supreme Court faced with this issue, the Court would find that Plaintiffs are legally entitled to recover for the wrongful death of their minor child, Phillip Haas, under Auto–Owner's underinsured motorist provision. Unlike the plaintiffs' children in *Armstrong* and *Bush*, Phillip Haas was a resident of his father's home at the time of the accident which claimed his life, and thus, was an insured who suffered bodily injury under the policy. Accordingly, Phillip Haas, unlike either of the decedents in *Armstrong* or *Bush*, would have been entitled to underinsured motorist benefits had he survived.[3] In finding that the Indiana Supreme Court would so hold, the court would note that this interpretation is consistent with the majority of other jurisdictions addressing this issue. *See, e.g.,* 12 COUCH ON INSURANCE § 171:6 (3d ed. 2009) ("UM/UIM coverage allows recovery for wrongful death, often regardless of the policy language. Wrongful death is often construed to fall within the definition of the term "bodily injury". Benefits for wrongful death should be paid to the decedent's survivors, rather than the decedent's estate, in accordance with the applicable wrongful death statute.").

Implicit to both *Armstrong* and *Bush* is the conclusion that a decedent's status as an insured implicates or triggers uninsured motorist coverage under the uninsured motorist provisions at issue. In *Armstrong*, the only issue tried to the jury was the decedent's status as an insured under the Federated policy. Were the issue not material, the *Armstrong* Court would not have discussed the issue on appeal. *Armstrong*, 785 N.E.2d at 291

(charactering the trial court's finding that Hillary was not an insured under the underinsured motorist provision of the Federated policy as a "critical conclusion"). In *Bush*, the issue raised by the decedent's parents was whether State Farm's uninsured motorist provision violated Indiana's uninsured motorist statute by requiring that "bodily injury" be sustained by an "insured." In holding that State Farm's policy did not violate Indiana's uninsured motorist statute, the *Bush* Court held that "Indiana's uninsured motorist statute requires coverage only for bodily injuries sustained by an insured." *See Bush*, 905 N.E.2d at 1007–08; *accord Auto–Owners Ins. Co. v. DeJohn*, 640 So.2d 158 (Fla. App.1994) (holding that Florida's uninsured motorist statute requires coverage for bodily injuries sustained by a child killed by an automobile where the child was an "insured" under the Auto–Owners policy at issue).

 Moreover, the language of the underinsured motorist statute and its underlying public policy favor coverage. By its express terms, the underinsured motorist statute's purpose is to provide a remedy where a tortfeasor's coverage for "bodily injury or death" is inadequate. Ind. Code § 27–7–5–2. The statute "is designed to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents...." *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 459 (Ind.1999). Because Indiana's underinsured motorist statute is remedial in nature, its provisions are liberally interpreted in favor of the insured. *State Farm Fire & Cas. Co. v. Garrett*, 783 N.E.2d 329, 333 (Ind.Ct.App.2003). Thus, the definition of "bodily injury" in the

---

**3.** In *Armstrong* and *Bush*, the decedents would not have been entitled to underinsured motorist coverage had they survived. In that

context, the individuals sustaining the bodily injury were not entitled to underinsured motorist benefits under their respective policies.

Auto–Owners' policies cannot be more restrictive than as required by the underinsured motorist statute. This is a generally recognized proposition of law: "[w]here the provisions of a policy regarding uninsured motorist coverage are more restrictive than the relevant statutory provisions requiring the same, the requirements of the statute will prevail." *Ind. Ins. Co. v. Noble,* 148 Ind.App. 297, 306, 265 N.E.2d 419, 425 (1970); *see also DeJohn,* 640 So.2d at 161 ("[W]e conclude that an insurance policy which excludes uninsured motorist coverage for mental pain and suffering of a deceased's survivor, where the deceased/insured could have recovered damages, violates the uninsured motorist law and the wrongful death act."). Therefore, the remedial purpose of the underinsured motorist statute is not voided by an insured's death.

For the reasons set forth above, the court finds that, to the extent Phillip was a passenger in the Myers' vehicle at the time of the automobile accident that claimed his life, the Plaintiffs are legally entitled to recover any underinsured motorist benefits under the Auto–Owners' policies. Because the underlying state court action has yet to result in any judgment, it remains to be seen whether any amount of Auto–Owners' underinsured motorist coverage is payable. Rather, for the limited purpose of this action, the court merely declares and determines that Auto–Owners' underinsured motorist coverage will be implicated in the event of any judgment in the underlying action exceeding $50,000. Since the identity of the driver of the Myers' automobile at the time of the accident is still a disputed issue, however, the court is unable to grant summary judgment in Plaintiffs' favor. Auto–Owners' Motion for Summary Judgment and the Plaintiffs' Cross–Motion for Partial Summary Judgment are therefore **DENIED.**

## B. Refusal to Waive Subrogation Claim

Plaintiffs also claim that Auto–Owners' "refusal . . . to waive subrogation pursuant to I.C. 27–7–5–6 was done for purposes other than subrogation, outside the purview of the statute, and constitutes a misuse of the statute causing further damages to the plaintiffs." (Complaint ¶ 13). In support of this allegation, Plaintiffs allege that the Myers offered to settle the underlying wrongful death claim filed in state court, that Progressive (the Myers' automobile liability insurance carrier) offered the Plaintiffs the policy limits, and that Plaintiffs wanted to settle the matter. (*Id.* ¶ 9–10). Plaintiffs notified Auto–Owners of the offer, but Auto–Owners refused to consent to the Plaintiffs' settlement with the Myers and their insurance company. (*Id.* ¶ 11–12). Plaintiffs contend that Auto–Owners' stated reason for refusing to waive subrogation—that the driver of the Myers' automobile at the time of the accident was unknown—is a legally insufficient reason. Instead, an insurer's decision to subrogate should be based upon the financial solvency and feasibility of collection against the tortfeasor after the tortfeasor's liability coverage has been exhausted.

Indiana Code § 27–7–5–6 governs an insurer's subrogation rights with respect to underinsured motorist benefits. It states, in relevant part:

(a) . . . The insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death, or property damage, for which payment is made by the insurer. Such insurer may enforce such rights in its own name or in the name of the person to whom

payment has been made, as in their interest may appear, by proper action in any court of competent jurisdiction.

(b) An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:

(1) the insurer has been provided with a written notice that:

(A) informs the insurer of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist; and

(B) includes a certification of the liability coverage limits of the underinsured motorist; and

(2) the insurer fails to advance payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insurer receives the notice described in subdivision (1).

However, an insurer that, under the circumstances described in subdivision (1), advances payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement, has full rights of subrogation as provided in its policy or endorsement affording the underinsured motorist coverage.

Ind.Code § 27–7–5–6(a), (b).

■ As is evident from a plain reading of the Subrogation Statute, the Subrogation Statute does not require an insurer to base its subrogation decisions on the financial means or solvency of the potential tortfeasor. Auto–Owners has the right under the statute to protect its contractual right to subrogation, and the exercise of that right does not contravene its duty of good faith and fair dealing toward its insured. Indeed, the evidence in this case reflects that Auto–Owners followed the dictates of the statute by tendering the policy limits to the Plaintiffs within thirty (30) days of receiving notice of the Plaintiffs' settlement. Accordingly, the court finds the Plaintiffs' claim is without merit. Auto–Owners' motion for summary judgment is therefore **GRANTED** on that claim.

## C. Additional Claims

Plaintiffs claim there is an issue of fact regarding whether Auto–Owners conducted a proper investigation; whether Auto–Owners deviated from standard practices with respect to conducting an asset check; whether Auto–Owners breached a duty to separate claims handling; and whether Auto–Owners intentionally declined to investigate the facts of this case. Plaintiffs did not raise these issues in their Complaint. Accordingly, Auto–Owners was not given fair notice of these claims and thus, the arguments with respect to these claims are hereby stricken.

## IV. Conclusion

For the reasons explained above, Auto–Owner's Motion for Summary Judgment (Docket # 29) is **GRANTED** in part and **DENIED** in part, and the Plaintiffs' Motion for Partial Summary Judgment (Docket # 31) is **DENIED**. Specifically, the court **GRANTS** Auto–Owners' motion with respect to Plaintiffs' claim that Auto–Owners' refusal to waive subrogation was done for impermissible purposes, and **STRIKES** Plaintiffs' additional claims which were not adequately raised in the Complaint. The court, however, **DENIES** both parties' motions with respect to whether Phillip Haas' death is covered under Auto–Owners' insurance policies issued to Anthony Haas, as there remains a material issue of fact as to who was driving the Myers' automobile at the time of the accident.