PROGRESSIVE INSURANCE
COMPANY, INC. Appellant–
Defendant,

v.

Misty Sweet BULLOCK and Luke Bull-
ock, Individually and as Next Friend
for C. A.D. B., S.E.B., and S.D.B., mi-
nor children, Appellees–Plaintiffs.

No. 16A01–0504–CV–142.

Court of Appeals of Indiana.

Jan. 31, 2006.

Rehearing Denied April 10, 2006.

Kirk A. Horn, Zachary J. Stock, Mandel Pollack & Horn, P.C., Indianapolis, for Appellant.

Kevin W. Ault, Rushville, for Appellees.

## OPINION

BARNES, Judge.

### Case Summary

Progressive Insurance Company, Inc., ("Progressive") appeals the denial of its motion for summary judgment on a complaint filed by Misty Sweet Bullock and Luke Bullock, individually and on behalf of their three children. We affirm in part and reverse in part.

### Issue

Progressive raises three issues, which we restate as:

I.  whether an anti-stacking clause from another policy applies to the Progressive policy;

II. whether Progressive may set off various amounts paid to the Bullocks by other insurance companies; and

III. whether the Bullocks' youngest son, S.E.B., may recover for injuries sustained in utero as a result of the accident.

### Facts

On June 1, 1999, Misty, who was thirty-eight weeks pregnant, and her two children[1] were passengers in a car driven by Teresa Jones when they were struck by a car driven by Rosie Kemp. Misty and her two children suffered multiple injuries, and Jones died as a result of injuries sustained in the accident. Misty's son, S.E.B., was

---

1.  Luke is all three children's father, but it does not appear that he and Misty were married at the time of the accident.

born on June 7, 1999, and also suffered from injuries caused by the accident. S.E.B. is now six and a half years old.

At the time of the accident, Luke Bullock maintained underinsured motorist ("UIM") coverage with Progressive in the amount of $50,000 per person and $50,000 per accident. Jones maintained UIM coverage with United Farm Bureau Insurance Company ("Farm Bureau") in the amount of $50,000 per person and $100,000 per accident. Kemp was insured by Indiana Insurance in the amount of $25,000 per person and $50,000 per accident.

On May 31, 2001, the Bullocks filed a complaint against several parties including Kemp and her husband, Jones's estate, and Progressive. On March 31, 2004, the Bullocks, on behalf of their children, entered into a settlement agreement with Kemp, Indiana Insurance, Jones's estate, and Farm Bureau. Pursuant to the agreement, the Bullocks released the children's claims against those parties in exchange for $24,500 from Indiana Insurance and $80,500 from Farm Bureau. Indiana Insurance also paid Jones's estate the remaining $25,500 of its $50,000 policy limit.

On September 7, 2004, Progressive filed an amended motion for summary judgment, which the Bullocks opposed. On February 10, 2005, the trial court denied Progressive's motion. Progressive then sought an interlocutory appeal.

### Analysis

Progressive argues that its motion should have been granted because it owes no obligation to the Bullocks under the UIM provisions of the policy with Luke. "Our standard of review for summary judgment is that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Bushong v. Williamson*, 790

N.E.2d 467, 473 (Ind.2003) (citing Ind. Trial Rule 56(C)). All facts and reasonable inferences are construed in favor of the non-moving party, and our review is limited to those materials designated to the trial court. *Id.* Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment. *Liberty Ins. Corp. v. Ferguson Steel Co., Inc.*, 812 N.E.2d 228, 230 (Ind.Ct.App. 2004).

### I. Anti-stacking Clause

■■ Progressive first argues that it is not liable to the Bullocks because the insurance contract between Jones and Farm Bureau contained an anti-stacking clause. Generally, anti-stacking clauses "limit coverage when coverage under another policy is currently available so as to preclude stacking or double recovery of uninsured motorist coverages." *Pafco General Ins. Co. v. Providence Washington Ins. Co.*, 587 N.E.2d 728, 729 n. 2 (Ind.Ct.App.1992), *trans. denied.* Progressive contends that the anti-stacking clause in the Farm Bureau contract should be enforceable between Progressive and the Bullocks. Progressive relies on *Pafco* for the proposition that the Bullocks should be bound by the $100,000 per accident limit in the Farm Bureau policy and not stack the proceeds from the Progressive policy on top of that. Accordingly, Progressive contends it owes nothing to the Bullocks because they already recovered more than $100,000 from Farm Bureau and Indiana Insurance.

However, both insurance contracts at issue in *Pafco* contained anti-stacking clauses. *Id.* at 729, 732. The question in *Pafco* was whether there was other insurance available to be stacked. *Id.* at 732. After determining that there was, we con-

cluded that, based on the anti-stacking clauses, recovery was restricted to the highest limit under any one policy. *Id.* Contrary to Progressive's characterization, we did not conclude that an anti-stacking clause in another policy limited the insured's recovery from his or her own UIM provider.

Nothing in *Pafco* supports Progressive's contention that it may enforce the anti-stacking clause in the contract between Farm Bureau and Jones when its contract with Luke did *not* contain an anti-stacking clause, and Progressive provides us with no other rationale for the propriety of such an extended application of Farm Bureau's anti-stacking clause. Progressive could have included an anti-stacking clause in its contract, but it did not. Further, Luke never agreed to the inclusion of such a clause. "When the court finds a contract to be clear in its terms and the intentions of the parties apparent, the court will require the parties to perform consistently with the bargain they made." *McLinden v. Coco,* 765 N.E.2d 606, 612 (Ind.Ct.App. 2002). In absence of an anti-stacking clause in its contract with Luke, Progressive's claim against stacking the Bullocks' recovery fails. Accordingly, Progressive has not established that it is entitled to judgment as a matter of law on this basis.

## II. Set Offs

█ Progressive also argues that if the Farm Bureau anti-stacking clause is not applicable, it is not liable to the Bullocks because of various set offs. The Progressive policy provides in part, "The Limits of Liability under [the UIM provision] shall be reduced by all sums ... paid because of bodily injury or property damage by or on behalf of any persons or organizations who

may be *legally responsible,* including but not limited to, all sums paid under Part I; ...." App. p. 302 (emphasis omitted) (emphasis added).

Progressive contends that pursuant to this language it is entitled to a set off for the $24,500 paid to the Bullocks by Indiana Insurance on behalf of Kemp. The Bullocks respond that pursuant to the settlement agreement with Kemp, they executed a release, and Kemp is "not answerable in negligence as a result of the release." Appellees' Br. p. 9. Assuming this claim is properly before us,[2] the Bullocks' claim fails. Even if the Bullocks have released all of their claims against Kemp and she is no longer answerable in negligence, it is largely undisputed that she was "legally responsible" for the accident. For example, the crash report prepared by the Indiana State Police concluded that Kemp's vehicle was "at fault for going left of center, and speed [sic] too fast for road conditions due to the weather." App. p. 166. Although the Bullocks have released their negligence claims against Kemp pursuant to a settlement agreement, they have not established that she was not "legally responsible" for the accident. Pursuant to the terms of the policy, Progressive is entitled to a set off for the $24,500 paid by Indiana Insurance.

█ Progressive goes on to argue that the remaining $25,500 of the Progressive policy limits should be set off by the $80,500 paid by Farm Bureau on behalf of Jones's UIM coverage. Progressive claims that it is entitled to set off Farm Bureau's payment because Farm Bureau "is an organization, which, by virtue of its contract to provide UM/UIM coverage to the vehicle in which the Bullocks were

**2.** The parties did not provide us with a transcript of the summary judgment hearing. We assume the argument was addressed at the hearing even though it was not specifically included in the Bullocks' motion in opposition to summary judgment.

riding, became 'legally responsible' for payment of any and all claims caused by the negligent tortfeasor." Appellant's Reply Br. p. 4. Progressive explains that "Farm Bureau effectively stands in the shoes of the tortfeasor." Appellant's Br. p. 7. However, it is unclear whether Progressive is arguing that Jones is the tortfeasor or that Kemp is the tortfeasor.

If Progressive is asserting that Jones is the tortfeasor and Farm Bureau stands in her shoes, this assertion fails. In an earlier order granting summary judgment for Jones's estate on the Bullocks' complaint, the trial court found, "the actions of Teresa Jones while operating her automobile, were not the proximate cause of the accident involving the parties." March 14, 2003 Summary Judgment Order.[3] Progressive does not address this order and, without more, Progressive has not shown that Jones was a tortfeasor. Because the trial court has concluded that Jones was not negligent, Progressive has failed to establish that Farm Bureau is legally responsible for her actions.

To the extent, if any, Progressive is arguing that Farm Bureau is legally responsible for Kemp's negligence simply because Farm Bureau provided UIM coverage to Jones, this argument also fails. The underlying purpose of UIM coverage "is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy." *Corr v. American Family Ins.*, 767 N.E.2d 535, 540 (Ind.2002). Progressive provides us with no authority that UIM coverage is intended to make a UIM insurance provider directly liable for the negligent acts of the tortfeasor.

In fact such an assertion would be contrary to *American Economy Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162 (Ind.1992). In that case, American was the primary UIM insurer, and Motorists provided excess UIM coverage.[4] *Id.* at 164–65. The policy at issue in *American Economy* included set off language almost identical to that in the Progressive policy. *Id.* at 164. In addressing the excess insurer's liability, the *American Economy* court noted:

> It may seem unclear whether this would require a reduction to be made for payments from American's underinsured motorists coverage. The policy provision is analogous to Ind.Code § 27–7–5–5(c)(1)(A) which permits a reduction for "the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury" .... This reduction would not include underinsured motorists coverage payments

---

3. We note that this order was not included in Progressive's appendix. The Bullocks' designation of evidence in opposition to Progressive's motion for summary judgment indicates that this order was included as designated evidence. Although all of the Bullocks' other designated evidence was included in the appendix, this order was not. Instead, an extra copy of the trial court's February 10, 2005, order denying Progressive's motion was included. A copy of the March 14, 2003 order was provided to us pursuant to a writ of certiorari issued on December 13, 2005.

4. The Motorists policy provided, "amounts payable under its underinsured motorists coverage are to be reduced by sums paid 'because of the bodily injury or property damage sustained by or on behalf of persons or organizations who may be legally responsible.'" *Id.* Likewise, the Progressive policy provides, "The Limits of Liability under Part III shall be reduced by all sums ... paid because of bodily injury or property damage by or on behalf of any persons or organizations who may be legally responsible ...." App. p. 302 (emphasis omitted). We are unsure why Progressive compares the language in the American policy (primary insurer) to the language in the Progressive policy (excess insurer).

made by American. We view the policy limitation to be no more restrictive upon the insured than the statutory language. *We therefore construe the Motorists's policy phrase to refer only to sums from those directly liable for causing the injuries, and to not permit reduction from amounts payable for sums form American's underinsured motorists coverage.* As a matter of public policy, however, in no event will Motorists be required to pay an amount which would result in compensation to the insured for more than the total actual damages sustained.

*American Economy,* 605 N.E.2d at 165 n. 5 (emphases omitted, emphasis added).

Even if, as Progressive asserts, this language is dicta, it is certainly informative. Here, Farm Bureau is the primary UIM insurer and Progressive is the excess UIM insurer. Based on the rationale in the *American Economy* footnote, we reject Progressive's interpretation that the set off language requires a reduction for payments made by Farm Bureau. The mere act of providing UIM coverage to Jones does not make Farm Bureau legally responsible for Kemp's negligent acts. Because Jones was not directly liable for causing the injuries, Progressive is not entitled to set off the payments made by Farm Bureau. Thus, Progressive has not established as a matter of law that it is entitled to set off the amounts paid by Farm Bureau.

■ Progressive also argues it owes no obligation to the Bullocks because Kemp was not underinsured. Kemp's per accident limit is $50,000, and the per accident UIM limit in the Progressive policy is also $50,000. Progressive contends that be-cause the limits are the same, Kemp was not underinsured.

Progressive relies on a "limits-to-limits" comparison. The Bullocks respond that pursuant to *Corr,* a limits-to-limits comparison is not appropriate. The *Corr* court considered whether the tortfeasor's policy limits or the amount actually available for payment to the insured should be compared to the insured's UIM limits when determining whether a vehicle is underinsured. *Corr,* 767 N.E.2d at 538–39. This issue arises when multiple people are injured in a single accident and the tortfeasor's policy limits are divided between them so that each receives less than the per accident policy limit.[5]

*Corr* recognized that when multiple people are injured in an accident, employing a limits-to-limits comparison is inconsistent with the view of the UIM statute as a full-recovery, remedial measure, because an injured party may be in a better position if the driver responsible for the accident had no insurance at all than if he or she had insurance. *Id.* at 540. Said another way, a limits-to-limits comparison has the potential to leave "the victim of an underinsured motorist worse off than the victim of a wholly uninsured motorist." *Id.* The court recognized that although each method creates its own anomalies, the legislature has chosen to accept the available amounts formulation as less problematic. *Id.* at 540.

Notwithstanding *Corr,* Progressive contends that a limits-to-limits comparison is appropriate because the *Corr* court referred to *Allstate Ins. Co. v. Sanders,* 644 N.E.2d 884 (Ind.Ct.App.1994). The *Corr* court observed, "In [*Sanders*] both in-

---

**5.** The court explained that "if a limits-to-limits comparison is to be employed, where only one insured is injured in an accident, the appropriate limits to compare to determine if a vehicle is underinsured are the per person limit of the tortfeasor's liability policy and the per person limit of the insured's UIM coverage." *Corr,* 767 N.E.2d at 538.

jured parties were insured by the same UIM policy. Under those circumstances the per accident limits *may* have been relevant." *Corr,* 767 N.E.2d at 538 (citation omitted, emphasis added). Progressive asserts that this language is relevant because the injured parties here were insured under the same UIM policy. However, this assertion is simply incorrect because the Bullocks and Jones, who were all compensated by Kemp's Indiana Insurance policy, were not insured under the same UIM policy. Jones was insured by Farm Bureau, and the Bullocks were insured by Progressive. Thus, the limits of Kemp's policy were split between Jones's estate and the Bullocks, and *Sanders* is not applicable.

Because the amount available for payment from Kemp to the Bullocks is only $24,500 after $25,500 was paid to Jones's estate, *Corr* controls the analysis of whether Kemp was underinsured. When comparing the amount available for payment to the Bullocks, $24,500, to the Progressive policy limit of $50,000, Kemp was underinsured. To hold otherwise would leave the Bullocks in a better position if Kemp was uninsured than if she was underinsured.

■ In a similar vein, Progressive relies on *Medley v. American Economy Ins. Co.,* 654 N.E.2d 313, 315 (Ind.Ct.App.1995), *trans. denied* (1996), and *Gardner v. State Farm Mut. Ins. Co.,* 589 N.E.2d 278, 282 (Ind.Ct.App.1992), *trans. denied,* for the proposition that when multiple people are injured in an accident a UIM provider is entitled to set off all payments made by the tortfeasor's insurer regardless of

whether all of the injured parties make UIM claims. Pursuant to these cases, if three people are injured in an accident and the per accident limit of the tortfeasor's insurance is split three ways, the UIM provider is entitled to set off the payments to all three even if only two of them make a UIM claim. Therefore, Progressive claims, it is entitled to set off the $24,500 paid to the Bullocks and the $25,500 paid to Jones paid by Kemp even though Jones is not making a UIM claim against Progressive.

However, in *Gardner* and *Medley,* even after the set off, each of the claimants recovered in excess of the statutory minimum. That would not be the case here. The per accident statutory minimum amounts of financial responsibility is $50,000.[6] Ind.Code § 9–25–4–5(2). Allowing Progressive to set off the amounts paid to Jones by Kemp leaves the Bullocks with $25,500 less than the statutory minimum. Thus, *Gardner* and *Medley* are not applicable to the facts before us today.

Moreover, allowing Progressive to set off the payments to Jones by Kemp under these circumstances flies in the face of the policy in *Corr* because it reduces the amount available for payment to the Bullocks to less than the Progressive UIM policy limits and the statutory minimum. This is the very result that *Corr* intended to avoid. For these reasons, Progressive is not entitled to set off the $25,500 paid to Jones by Kemp.

### III. S.E.B.'s Injuries [7]

■ Progressive argues that because Misty was thirty-eight weeks pregnant

---

**6.** The Bullocks assert that Indiana Code Section 27–7–5–5(c) describes the amount of coverage that a UIM policy must provide. Appellee's Br. p. 13. That statute, however, defines the *"maximum* amount payable for bodily injury under uninsured or underinsured motor-

ist coverage." I.C. § 27–7–5–5(c) (emphasis added).

**7.** We note that Progressive made this argument in its November 22, 2002 brief in support of its motion for summary judgment. The trial court never ruled on this motion,

with S.E.B. at the time of the accident, he was not a "person" under the contract. Progressive claims that S.E.B. "was not a child under Indiana law at the time of the accident." Appellant's Br. p. 10.

Progressive's argument is based on *Bolin v. Wingert*, 764 N.E.2d 201, 203 (Ind. 2002), which addressed whether an eight to ten week old fetus was a child under Indiana's Child Wrongful Death Statute. Based on the express language of the statute, the *Bolin* court concluded that in this limited context, "the legislature intended that only children born alive fall under Indiana's Child Wrongful Death Statute." *Id.* at 207. In its reply brief, however, Progressive concedes that Indiana law recognizes a cause of action for children who suffer injuries in utero. *See Herron v. State*, 729 N.E.2d 1008, 1011 (Ind.Ct.App. 2000) ("We recognize that in a civil context, for some time Indiana case law has permitted recovery for injuries sustained by unborn children due to the negligent or intentional acts of others."); *Walker v. Rinck*, 604 N.E.2d 591, 594 (Ind.1992) (acknowledging the ability of a person not yet conceived at the time of the negligent act to sue the negligent actor otherwise known as a "preconception tort"). Regardless, these negligence actions are not determinative of whether S.E.B. is a person under the Progressive policy.

■■■ Insurance contracts are subject to the same rules of interpretation and construction as other contracts. *Rice v. Meridian Ins. Co.*, 751 N.E.2d 685, 688 (Ind.Ct.App.2001), *trans. denied.* Our goal is to enforce the intent of the parties as provided in the insurance contract. *Id.* If the language is clear and unambiguous, we give that language its plain and ordinary meaning. *Id.* However, a contract provision is ambiguous if it is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 244 (Ind.2000). "It is well settled that '[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." *Id.* (citation omitted) (alteration in original).

■■■ Generally, ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage. *Id.* This is particularly true where the policy is not the product of an equal bargaining relationship and the language has been chosen by the insurer. *Id.*

"Insurance policies are prepared in advance by insurance and legal experts, having in view primarily the safeguarding of the interests of the insurer against every possible contingency. The insurer not only fully knows the contents of the writing, but also adequately comprehends its legal effect. The insured has no voice in fixing or framing the terms of [the] policy, but must accept it as prepared and tendered, usually without any knowledge of its contents, and often without ability to comprehend the legal significance of its provisions."

*Id.* (quoting *Glens Falls Ins. Co. v. Michael*, 167 Ind. 659, 677, 74 N.E. 964, 969 (1905)) (alteration in original).

The Progressive policy's definition of insured includes the term "relative," which is

and Progressive filed its amended motion for summary judgment on September 7, 2004. This argument was not included in the amended motion for summary judgment, which contained entirely different arguments than those raised in the first motion. For the sake of judicial economy, however, we assume this argument was properly before the trial court and address it today.

defined in part as, "a person residing in the same household as you, and related to you by blood, marriage, or adoption, including a ward, stepchild, or foster child." App. p. 255. The contract does not define "person." Whether the term "person," which is defined as "[a] human being," includes a thirty-eight-week-old fetus is ambiguous. Blacks Law Dictionary 1162 (7th ed.1999). This ambiguity must be construed against Progressive. *See id.* Progressive was in a position to define "person" or otherwise specifically exclude a full term fetus from its definition of "relative." It did not do this. Accordingly, Progressive has not established as a matter of law that S.E.B.'s injuries sustained in utero are not covered under the policy.

### Conclusion

Progressive may not borrow the anti-stacking clause in the contract between Farm Bureau and Jones and apply it to its policy. Although Progressive may set off the amount paid to the Bullocks by Indiana Insurance on behalf of Kemp, Progressive may not set off the amounts paid to the Bullocks by Jones's UIM coverage. A limits-to-limits comparison is not the appropriate method for determining whether Kemp was underinsured, and Progressive may not set off or otherwise reduce its obligation to the Bullocks by the amount paid to Jones by Kemp. S.E.B. is a person when construing the policy against Progressive. Thus, the trial court properly denied Progressive's motion for summary judgment. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

NAJAM, J., and CRONE, J., concur.