

**FILED**

Sep 16 2019, 6:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Nicholas C. Deets
Tyler Zipes
Hovde Dassow + Deets, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Christopher D. Cody
Georgianna Q. Tutwiler
Hume Smith Geddes Green &
Simmons, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven Glover, as Personal
Representative of the Estate of
Shelina M. Glover,

*Appellant-Plaintiff*,

v.

Allstate Property and Casualty
Insurance Company,

*Appellee-Defendant*.

September 16, 2019

Court of Appeals Case No.
19A-CT-403

Appeal from the Marion Superior
Court

The Honorable James B. Osborn,
Judge

Trial Court Cause No.
49D14-1711-CT-41566

**Brown, Judge.**

[1] Steven Glover, as Personal Representative of the Estate of Shelina M. Glover (the "Estate"), appeals the trial court's grant of the motion for summary judgment filed by Allstate Property and Casualty Insurance Company ("Allstate") and the denial of its motion to correct error. He raises one issue which we revise and restate as whether the trial court erred in granting summary judgment in favor of Allstate . We affirm.[1]

## Facts and Procedural History

[2] This case involves an attempted recovery under an automobile insurance policy's underinsured motorist ("UIM") provisions for a July 22, 2016 roadside collision involving three vehicles driven by Kenneth Bogue, Matthew Hahn, and Terry Robinson, which resulted in the death of Shelina M. Glover Robinson,[2] who was a passenger in Terry's vehicle.

[3] At the time of Shelina's death, she had an auto insurance policy through GEICO insurance ("GEICO"). Her parents, Phillip and Dovie Glover (the "Glovers"), were insured under Allstate Policy # 922 379 189 (the "Policy"), which provided on the Policy Declarations page for "Uninsured Motorists Insurance" coverage limits in the amount of "$100,000 each person" for the

---

[1] On cross-appeal, Allstate asserts that the trial court erred in failing to grant its motion for summary judgment on the basis it was not properly notified of Shelina's status as a "resident relative" in the household of her parents and that, therefore, she did not qualify as an insured under her parents' policy with Allstate. The Court need not reach this issue because we conclude that the court properly granted summary judgment based on Part 3 of the Policy.

[2] The parties refer to Shelina differently, but do not dispute that she is the decedent.

Glovers' 2014 Ford Truck Edge and 2006 Ford Truck F150. Appellant's Appendix Volume II at 68-69. It defined "Resident" for use throughout the policy as a "person who physically resides in **your** household with the intention to continue residence there."[3] *Id.* at 72. It defined "Bodily Injury" for use throughout the policy in part as "physical harm to the body, sickness, disease, or death." *Id.*

[4] Part 3 of the Policy, titled "Uninsured Motorists Insurance Coverage," began with a general statement of coverage that provided, "**we** will pay damages which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured auto** because of . . . **bodily injury** sustained by an **insured person**." *Id.* at 80. It defined in part "Insured Person(s)" as "**you** and any **resident** relative" and an "uninsured auto" as:

> an underinsured **motor vehicle** which has bodily injury liability protection in effect and applicable at the time of the accident in an amount equal to or greater than the amounts specified for bodily injury liability by the financial responsibility laws of Indiana, but:
>
> a. in an amount less than the applicable limit of liability for this coverage shown on the Policy Declarations; or

---

[3] Nontitular words or phrases appearing in bold letters in this decision appear as such in the Policy and appear to indicate expressly defined terms.

b. available limits have been reduced to less than the applicable limit of liability for this coverage as shown on the Policy Declarations.

*Id.* at 80-81. It provided further in Part 3:

**Limits of Liability**

The coverage limit shown on the Policy Declarations for:

1. "each person" is the maximum that **we** will pay for damages arising out of **bodily injury** to one person in any one **motor vehicle** accident, including damages sustained by anyone else as a result of that **bodily injury**.

2. "each accident" is the maximum **we** will pay for damages arising out of all **bodily injury** in any one **motor vehicle** accident. This limit is subject to the limit for "each person."

\* \* \* \* \*

The liability limits shown on the Policy Declarations for Uninsured Motorists Insurance may not be added to the limits for similar coverage applying to other **motor vehicles** to determine the limit of insurance coverage available. This applies regardless of the number of:

1. policies involved;

2. vehicles involved;

3. persons covered;

4. claims made;

5. vehicles or premiums shown on the Policy Declarations; or

6. premiums paid.

THIS MEANS THAT NO STACKING OR AGGREGATION OF UNINSURED MOTORISTS INSURANCE WHATSOEVER WILL BE ALLOWED BY THIS POLICY.

If none of the **autos** shown on the Policy Declarations is involved in the accident, the highest limits of liability shown on the Policy Declarations for any one **auto** will apply.

The limits of this Uninsured Motorists Insurance shall be reduced by:

1. all amounts paid or payable by or on behalf of any person or organization that may be legally responsible for the **bodily injury** for which the payment is made, including, but not limited to, any amounts paid under the bodily injury liability coverage of this or any other insurance policy;

2. all amounts paid or payable under any workers' compensation law; and

3. all amounts paid or payable under any disability benefits law.

The maximum amount payable for **bodily injury** under uninsured coverage is the lesser of:

(1) the difference between:

>> (a) the amount paid in damages to the insured by or for any person or organization who may be liable for the **insured person's bodily injury**; and

>> (b) the "each person" limit of uninsured motorists coverage provided in the **insured person's** policy; or

(2) the difference between:

>> (a) the total amount of damages incurred by the **insured person**; and

>> (b) the amount paid by or for any person or organization liable for the **insured person's bodily injury**.

**We** are not obligated to make any payment for **bodily injury** under this coverage which arises out of the use of an

underinsured **motor vehicle** until after the limits of liability for all liability protection in effect and applicable at the time of the accident have been exhausted by payment of judgments or settlements.

**Non-Duplication of Benefits**

No injured person will recover duplicate benefits for the same elements of loss under this or any other uninsured motorists' insurance, including approved plans of self-insurance.

**If There Is Other Insurance**

If the **insured person** was in, on, getting into or out of, or on or off of a vehicle **you** do not own which is insured for uninsured motorists, underinsured motorists, or similar type coverage under another policy, coverage under Uninsured Motorists Insurance, Part 3, of this policy will be excess. This means that when the **insured person** is legally entitled to recover damages in excess of the other policy limits, **we** will pay up to **your** policy limit, but only after the other insurance has been exhausted. No **insured person** may recover duplicate benefits for the same element of loss under Uninsured Motorists Insurance, Part 3, of this policy and the other insurance.

If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable by the policy with the highest limit of uninsured motorists' coverage.

**We** will bear **our** proportionate share with other uninsured motorists insurance benefits. Our share is determined by adding the limits of liability of this insurance to the limits of all other insurance that apply on the same basis and finding the percentage of the total that our limits represent. This applies no matter how many automobiles or automobile policies may be involved whether written by **Allstate** or another company.

*Id.* at 82-83.

[5] On November 6, 2017, the Estate filed a complaint against Allstate. As amended, the complaint alleged: on July 22, 2016, Shelina resided with her parents, the Glovers, and "was a 'Resident Relative'" under the Policy; the Policy provided UIM coverage of $100,000 per person; the Policy provided UIM coverage for her wrongful death that was excess to Terry's American Family Insurance Company ("American Family") policy which insured him on July 22, 2016; and that the Estate was "contractually entitled to payment under the underinsured motorist coverage of [the Policy] that is excess to the underinsured motorist coverage" provided by the American Family policy. *Id.* at 12. It further alleged that, on or before August 23, 2016, Allstate entered into a resolution determining that Bogue was fifty-two percent at fault and Hahn was forty-eight percent at fault for the July 22, 2016 collision and that Bogue's Omni policy and Hahn's Allstate policy were insufficient to cover the injuries and damages resulting from Shelina's death.

[6] Bogue's insurer, Omni Insurance Company ("Omni"), filed an interpleader action, and a mediation agreement dated January 15, 2018, under cause number 16C01-1610-CT-476 settled claims of several injured parties, was signed by numerous parties including the Estate, and indicated Bogue's Omni policy would pay $25,000 to the Estate and Hahn's Allstate policy would pay $50,000 to the Estate.

[7] On October 22, 2018, Allstate filed for summary judgment and argued: 1) that the Policy's requirement, that Allstate "be notified of a driver becoming a member of a household for purposes of making a claim as a resident relative under the policy," was not met, and 2) that the Estate had received an amount equal to or greater than the policy limits of the Policy from others, *i.e.* "full payment" available under the Policy, because it contained "a right of set off for payments made by all others as well as an anti-stacking clause." *Id.* at 21. In the "Statement of Undisputed Facts" section in its memorandum in support of summary judgment, Allstate indicated that the mediation in the Omni interpleader action resulted in payment to the Estate in the amount of $75,000. *Id.* at 21. It further stated that Shelina's GEICO auto insurance policy contained UIM coverage with limits of $25,000 per person and that "[b]oth [the Policy] and [Terry's] American Family policy contain language that places the UIM coverage that listed the vehicle involved in the accident as primary coverage."[4] *Id.* at 27.

[8] Allstate designated excerpts of Dovie Glover's deposition, the Estate's August 20, 2018 response to its request for admissions, and copies of the Policy and the mediation agreement. In the response to Allstate's request for admissions, the Estate admitted that it had received settlements from various parties and insurance companies from the accident that led to Shelina's death in amounts

---

[4] Prior to this statement, Allstate indicated that the "policy of underinsured motorist coverage issued to Terry Robinson and listing the 2005 Toyota contains the following terms" and quoted without citation what it asserted to be an excerpt of Terry's American Family policy. Appellant's Appendix Volume II at 26.

totaling $100,000 or more. On December 21, 2018, the Estate filed a response and cross-motion for summary judgment, in which it indicated that American Family and GEICO both paid it $25,000 in UIM benefits, making its UIM recovery a total of $50,000, and that it "then brought th[e] claim against Allstate for additional UIM benefits" – *i.e.*, it was seeking the "remaining $25,000 in UIM coverage" under the Policy. *Id.* at 166, 179. It designated an affidavit of Dovie Glover and a copy of Bogue's Omni auto policy.

[9] On January 24, 2019, the court granted summary judgment for Allstate "based solely on [Allstate's] position regarding offsets," and denied it with regard to the "question of notification." *Id.* at 201.

## *Discussion*

[10] The issue is whether the trial court erred in granting summary judgment in favor of Allstate. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* Under Trial Rule 56(C), the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Klinker v. First Merchs. Bank, N.A.*, 964 N.E.2d 190, 193 (Ind. 2012). If it is successful, the burden shifts to the nonmoving party to designate

evidence establishing the existence of a genuine issue of material fact. *Id.* In reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds supported by the Indiana Trial Rule 56 materials. *Catt v. Bd. of Comm'rs of Knox Cnty.*, 779 N.E.2d 1, 3 (Ind. 2002).

[11] The Estate argues that it "may seek up to $100,000 in underinsured motorist benefits" and that the "additional $25,000 in underinsured motorist benefits sought under [the Policy] will only bring the total underinsured motorist recovery to $75,000." Appellant's Brief at 19. It asserts it made UIM claims first under Terry's American Family policy and Shelina's GEICO policy and, then, it made a claim for additional, excess underinsured benefits under the Policy. It claims that, "even where policies contain valid reduction and anti-stacking clauses," a plaintiff is "entitled to make multiple underinsured motorist recoveries, *i.e.* he may 'stack' UIM recoveries or payments – so long as the aggregate underinsured motorist recovery does not exceed the highest applicable limits." *Id.* at 17.

[12] Allstate maintains that the Policy "mirrors . . . Ind. Code § 27-7-5-5," "is identical to the provisions contained in Ind. Code § 27-7-5-5(c),"[5] and contains

---

[5] Ind. Code § 27-7-5-5, which deals with "Limitations on Coverage" for uninsured and underinsured motorist coverage, provides:

> (a) The policy or endorsement affording coverage specified in this chapter may provide that the total limit of all insurers' liability arising out of any one (1) accident shall not exceed the highest limits under any one (1) policy applicable to the loss, but in no event may coverage be less than the minimum set forth in IC 9-25-4-5.

an anti-stacking provision which limits the total recovery an injured party can recover to no more than the highest applicable UIM limit. Appellee's Brief at 13. It contends that the Estate recovered all payments available to it because both American Family and GEICO paid an additional $25,000 under the UIM provisions of their respective policies and that, "[t]herefore, because the highest policy limit available to the Estate in this case is $100,000, and the Estate has received $125,000 in overall payments, the Estate has received an amount equal to or greater than what it was owed under the limits of the various policies." *Id.* at 8.

[13] In its reply brief, the Estate argues that Allstate is entitled to use its offset provision in the Policy to reduce its $100,000 underinsured motorist limits by $75,000, or the amount the Estate received in liability recoveries, "but not by the $50,000 the Estate received" in UIM recoveries, leaving "$25,000 in underinsured motorist benefits available under the Policy." Appellant's Reply

---

* * * * *

(c) The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:

    (1) the difference between:

        (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and

        (B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or

    (2) the difference between:

        (A) the total amount of damages incurred by the insured; and

        (B) the amount paid by or for any person or organization liable for the insured's bodily injury.

Brief at 9. It also contends that the anti-stacking provision "does not bring the liability recoveries into play whatsoever" and that the application of "an independent offset provision followed by an anti-stacking provision" is such that "*after the offsets [a]re applied*, the antistacking provision applie[s] to prevent the insureds from obtaining a total underinsured motorist recovery of more than the underinsured motorist policy limits." *Id.* at 10-11 (citing *American Economy Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 164-165 (Ind. 1992)).

[14] "Insurers are free to limit the coverage of their policies, but such limitations must be clearly expressed to be enforceable." *State Farm Mut. Auto. Ins. Co. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016). This Court has explained:

> Insurance contracts "are governed by the same rules of construction as other contracts." *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997). The interpretation of an insurance contract is a question of law, and we address it *de novo*. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). Clear and unambiguous policy language is given its ordinary meaning in order to accomplish the primary goal of contract interpretation of determining the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577-578 (Ind. 2013). Where contractual language is ambiguous, we generally resolve those ambiguities in favor of the insured, but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole. *Id.* at 578. The failure to define a contractual term does not necessarily make that term ambiguous, nor does a simple disagreement about the term's meaning. *Id.* Rather, an ambiguity exists where the provision is susceptible to more than one reasonable interpretation. *Id.*

*Anderson v. Ind. Ins. Co.*, 8 N.E.3d 258, 262 (Ind. Ct. App. 2014).

As stated above, Part 3 of the Policy states that the liability limits shown on the Policy's Declarations page may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available, "regardless of the number of . . . policies involved[,] vehicles involved[,] persons covered[, or] claims made." Appellant's Appendix Volume II at 82. The Policy then indicates this is to mean no stacking or aggregation of uninsured motorists insurance policies is allowed. Thus, the Policy's UIM coverage limit in the amount of "$100,000 each person" is not to be increased, or stacked, regardless of the number of policies, vehicles, persons, or claims involved.[6]

The Policy states on the same page that the "limits of this Uninsured Motorists Insurance shall be reduced by [] all amounts paid or payable by or on behalf of any person or organization that may be legally responsible for the bodily injury for which the payment is made, including, but not limited to, any amounts paid under the bodily injury liability coverage of this or any other insurance policy." *Id.* In *Kinslow v. GEICO Ins. Co.*, 858 N.E.2d 109 (Ind. Ct. App. 2006), this Court interpreted similar setoff provisions and stated:

---

[6] To the extent that the Estate cites *Progressive Ins. Co., Inc. v. Bullock*, we note that the policy in that case lacked an anti-stacking provision. *See* 841 N.E.2d 238, 241 (Ind. Ct. App. 2006) ("In absence of an anti-stacking clause in its contract with [the deceased plaintiff], Progressive's claim against stacking [the plantiffs'] recovery fails.").

The language of Indiana Code Section 27-7-5-5(c) does not provide a set formula for calculating setoffs in all cases, but it does establish maximum and minimum parameters for the amount of recovery a plaintiff is entitled to as a result of a UM or UIM claim. *Gardner v. State Farm Mut. Ins. Co.*, 589 N.E.2d 278, 281 (Ind. Ct. App. 1992), *trans. denied*. We also conclude that the language of the statute is clear and unambiguous and is not open to interpretation. It says that the *maximum* UM or UIM bodily injury benefits to which an insured is entitled as the result of an accident is the *lesser* of the difference between the amount already recovered by the insured less the per person limit of UM/UIM coverage in the insured's policy, *or* the difference between the total amount of damages incurred by the insured and the amount already recovered by the insured.

*Id.* at 114. Here, the Policy provides that the "limits . . . shall be reduced by [] *all amounts paid* . . . ." Appellant's Appendix Volume II at 82 (emphasis added). The Estate has received amounts paid from other insurance policies which in sum totaled more than $100,000; namely, $25,000 from Bogue's Omni policy, $50,000 from Hahn's Allstate policy, $25,000 from Shelina's GEICO policy, and $25,000 from Terry's American Family policy. Accordingly, the Policy's UIM limit was reduced to zero. The Estate is not entitled to further recovery under the Policy.

[17] To the extent that the Estate draws upon *Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162 (Ind. 1992), to argue that the Policy's "legally responsible" language "only creates an offset for liability settlements," Appellant's Brief at 10, and that anti-stacking provisions apply after offset provisions "to prevent the insureds from obtaining a total underinsured motorist recovery of more than the

underinsured motorist policy limits," we do not agree. In *Am. Econ. Ins. Co.*, the Indiana Supreme Court examined only the policies' express limitation of liability, clarified that the policies' "more clearly delineated provisions" expressed "amounts payable" as "a sum limited to uninsured motorists coverage limits," and summarily affirmed "that portion of [this Court's] opinion analyzing the anti-stacking provisions that found they were clear and unambiguous."[7] 605 N.E.2d at 164-165. In a footnote, the Indiana Supreme Court stated:

> In discussing the potential recovery available under the excess coverage provided by Motorists, we note the policy provision that amounts payable under its underinsured motorists coverage are to be reduced by sums paid "because of the bodily injury or property damage sustained by or on behalf of persons or organizations who may be legally responsible." It may seem unclear whether this would require a reduction to be made for payments from American's underinsured motorists coverage. The policy provision is analogous to Ind. Code § 27-7-5-5(c)(1)(A) which permits a reduction for "the amount paid *in damages* to the insured by or for any person or organization *who may be liable* for the insured's bodily injury" (emphasis added). This reduction would not include underinsured motorists coverage payments made by American. We view the policy limitation to be no more restrictive upon the insured than the

---

[7] In *Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 593 N.E.2d 1242 (Ind. Ct. App. 1992), *aff'd in part and vacated in part by* 605 N.E.2d 162, this Court found that the policies contained clauses which precluded the stacking of underinsured motorist coverages; *i.e.*, the American Economy Insurance Company policy contained a clause providing that the "maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy" and the Motorists Mutual Insurance Company policy contained a clause providing that "[a]ny recovery for damages for bodily injury or property damage sustained by an insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance." 593 N.E.2d at 1244 (emphases omitted).

statutory language. We therefore construe the Motorists's policy phrase to refer only to sums from those directly liable for causing the injuries, and to not permit reduction from amounts payable for sums from American's underinsured motorists coverage. As a matter of public policy, however, in no event will Motorists be required to pay an amount which would result in compensation to the insured for more than the total actual damages sustained.

*Id.* at 165 n.5. We find that the limitations expressed in the Part 3 of the Policy are sufficiently different from those in the policy in *Am. Econ. Ins. Co.*, and thus we do not construe the Policy to refer "only to sums from those directly liable for causing the injuries." *Id.*

[18] We further do not find availing the Estate's reliance on *Wagner v. Yates*, 912 N.E.2d 805 (Ind. 2009). In that case, the plaintiff received injuries in an automobile collision while driving a vehicle owned by her employer, and the Indiana Supreme Court addressed a clause in her own automobile insurance policy which provided: "The limits of liability of this coverage will be reduced by: 1. A payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an underinsured motor vehicle." 912 N.E.2d at 808. The plaintiff recovered $50,000 from the purported tortfeasor "who 'may be legally liable' for 'loss caused by an underinsured motor vehicle," and the Court found that the defendant insurer's liability was reduced by the amount that the insurer of the purported tortfeasor paid to the plaintiff. *Id.* at 809. The Court then addressed the question of whether any sums "that may be payable to [the plaintiff] by [her employer's insurer] are similarly treated" and stated:

American Family argues that a UIM provider "effectively stand[s] in the shoes of a tortfeasor during evaluation of coverage." But the Court of Appeals rejected a similar argument in *Progressive Ins. Co., Inc. v. Bullock*, 841 N.E.2d 238 (Ind. Ct. App. 2006), *trans. denied*. The summarized facts in *Progressive* are these. Misty Bullock and her children were passengers in a car driven by Teresa Jones. They were injured when struck by a car that Rosie Kemp was driving. The following insurance was in play: Kemp was insured by Indiana Insurance Company in the amount of $25,000 per person and $50,000 per accident; Jones had UIM coverage with Farm Bureau Insurance Company in the amount of $50,000 per person and $100,000 per accident; and Bullock had UIM coverage with Progressive Insurance Company in the amount of $50,000 per person and $50,000 per accident.

Under terms of an agreement with Kemp, Indiana Insurance, Jones, and Farm Bureau, Bullock released the children's claims against those parties in exchange for $24,500 from Indiana Insurance and $80,500 from Farm Bureau. This left only the issue of Progressive's liability to Bullock. Progressive argued that after set-offs of payments made by Farm Bureau and Indiana Insurance Progressive owed no obligation under its policy. In relevant part the policy declared:

> The Limits of Liability under [the UIM provision] shall be reduced by all sums . . . paid because of bodily injury or property damage by or on behalf of any person or organizations who may be *legally responsible* . . . .

*Id.* at 241 (emphasis and alterations in original). The Court of Appeals agreed that Progressive was entitled to a set-off for the $[2]4,500 paid by Indiana Insurance. However, the court rejected Progressive's argument that "Farm Bureau effectively stands in the shoes of the tortfeasor" and thus Progressive was entitled to set off the payment made by Farm Bureau. *Id.* at 242. The court elaborated:

To the extent . . . Progressive is arguing that Farm Bureau is legally responsible for Kemp's negligence simply because Farm Bureau provided UIM coverage to Jones, this argument . . . fails. The underlying purpose of UIM coverage is to give the insured the recovery he or she would have received if the underinsured motorist had maintained an adequate policy. Progressive provides us with no authority that UIM coverage is intended to make a UIM insurance provider directly liable for the negligent acts of the tortfeasor.

*Id.* (internal citations and quotations omitted). We agree with the Court of Appeals' assessment. And as applied in this case we construe the phrase in American Family's policy, "payment made or amount payable by or on behalf of any person or organization which may be legally liable" as referring to payments by or on behalf of those directly liable for causing the injuries. This phrase does not require reduction from amounts payable for sums from State Farm's UIM coverage. *Accord Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162, 165 n.5 (Ind. 1992) (construing similar provision and declaring the "reduction would not include underinsured motorists coverage payments made by [a third party's insurance carrier]").

*Id.* at 809-810 (some internal citation omitted).

[19] Here, consistent with *Wagner*, GEICO and American Family were not directly liable for the negligent acts of then-potential tortfeasors Bogue and Hahn by virtue of providing Shelina with UIM coverage under their policies. However, even though the UIM providers are not directly liable, we cannot say they are not legally responsible under the Policy.

For the foregoing reasons, we affirm the trial court's entry of summary judgment.

Affirmed.

Altice, J., and Tavitas, J., concur.